PRESENT—M'KEAN, CHIEF JUSTICE—SHIPPEN, YEATES & SMITH JUSTICES.

---

### RESPUBLICA *against* ROBERT ROSS.

[ S. C. 2 Dall. 239.]

The party attempted to be injured, is a witness in an indictment for forgery; but the indorser of a conterfeit note cannot be received as a witness, unless he has paid or taken up such counterfeit.

A conspiracy is an indictable offence, though nothing be done in pursuance of it.

The want of a venue may be urged in arrest of judgment, after verdict on an indictment.

THE defendant was indicted in the Mayor's Court of the city of Philadelphia. The charge consisted of six counts:—1st, That he feloniously counterfeited a promissory note for 1470 dollars payable by Joseph Heister to John Smith. 2d, That he feloniously published the said note, knowing it to be counterfeited. 3d, That he having in his custody the said counterfeit note, feloniously required one Jacob Morgan to indorse the same. 4th, That he feloniously published the said note and indorsement thereon. 5th, Follows at full length. 6th, That he deceived the said Jacob Morgan with a counterfeit letter, to induce him to indorse the said note, which he pretended was true and genuine, well knowing the contrary to be true.

The 5th count in the indictment was in the following words: —"And the inquest aforesaid, doth further present, that the said Robert Ross, and one Langford Herring of the said city, yeoman, on the seventeenth day of August, in the year aforesaid, wickedly, maliciously, and unjustly devising and intending to cheat and defraud the said Jacob Morgan at the city aforesaid, unlawfully, falsely, and fraudulently did conspire, combine and agree among themselves, to obtain, acquire, and get into their hands and possession of and from the said J. M. a great sum of money, to wit, 1470 dollars, under a false colour, and pretence of procuring the said J. to endorse a certain false, forged and counterfeited promissory note, purporting to be signed by Joseph Heister, and to be endorsed by one John Smith : and the said R. R. in pursuance of, and according to the conspiracy, combination and agreement aforesaid, between him and the said L. H. so as aforesaid

before had, afterwards to wit, on the said seventeenth day of August, in the year aforesaid, falsely, fraudulently, unlawfully and deceitfully, did pretend to the said J. M., that the said promissory note was a true and genuine promissory note of the said J. H. for the said sum of 1470 dollars, and that the said L. H., in pursuance of, and according to the conspiracy, combination and agreement aforesaid, between him and the said R. R. so as aforesaid had, afterwards to wit, on the said seventeenth day of August, in the year aforesaid, and also by color and pretence of the said promissory note being a genuine promissory note of the said J. H. for the said sum of 1470 dollars, did fraudulently, unlawfully, and wickedly procure the said J. M. to indorse the said note, whereas, in truth and in fact, it was then and there false, forged and counterfeited. And so the jurors aforesaid do say, that the said R. R. and L. H. according to the conspiracy, combination, and agreement between them as aforesaid before had, him the said J. M. fraudulently, falsely and wickedly to defraud, did procure him the said J. M. to indorse the said promissory note, with an intent, frauduently, and unlawfully, to deceive and defraud the said J. M. of the sum of 1470 dollars, to the great damage of the said J. M., and against the peace and dignity of the commonwealth of Pennsylvania."

The indictment having been removed into this court, and Herring not having been taken on the process issued against him, the trial of Ross was had during the term, which continued four days.

In the course of the trial, Joseph Heister, whose note was charged to be forged, was offered as a witness, and was excepted to by Messrs. Rawle, M. Levy, Dallas, Thomas and J. M'Kean, the counsel for the defendant, on two grounds; 1. He shall not be allowed to impeach his own security. 2. He is incapacitated on the score of interest.

On the first head, it was said, the objection holds universally on principles of public policy. No man shall be allowed to hold out false credit to the world. 1. Term Rep. 296. 3 Woodeson 303.

On the second head, there is a peculiar interest vested in the injured party under the muncipal laws of this state, in prosecutions of this nature. Under the act of 12 Will. 3, (edit. of Laws 1775, pa. 5,) the forgers of charters, &c., forfeit double the value of the damage thereby sustained, one half whereof shall go to the party wronged; and by the 4 Ann., pa. 48, whoever shall counterfeit the hand or seal of another, with intent to defraud,

shall suffer three months imprisonment at hard labour, and be fined treble the value attempted to be defrauded, to the use of the party wronged.

But independently of these acts, the authorities in the books are numerous, and express, that in prosecutions for forgery, the party attempted to be defrauded is an incompetent witness. 2 Stra .728. Hardr. 331. 1 Salk. 283. Leach's Crown Cases, 9, 10, 50, 153, 25. 2 Hawk. 433. Leach's edit. 610. Gib. Law. Evid. 123, 124. It is true, that under some circumstances, the party may be a witness, as in Welle's case, where he had recovered the money. Bull. 280, 4to edit. 284. So where he had obtained a release. 1104. Leach. 162. Analogous hereto is the case of perjury. 2 Stra. 1043.

It is admitted, that in some instances, the parties interested in criminal prosecutions have been admitted as witnesses, under the peculiar necessity of those cases. 10 Mod. 193. As on an indictment for tearing a note. 1 Stra. 595. Espin. 711, 712. But no such necessity exists in the present instance, nor can any precedent be cited from the English books, to warrant the competency of the witness.

There are two leading principles of evidence in the criminal law, the one, that guilt should not be incurred with impunity; the other, that innocence should not be put in danger from impassioned testimony. In a very late case, it was admitted by the counsel for the crown, that if the person came to prove the forgery of his own note, he could not be a competent witness, because he would be *prima facie* liable to pay his own note. Leach. 289. And in the same case, (288,) the words of Lord Mansfield are quoted: " courts of justice do not sit to weigh what degree of temptation the minds of men are capable of resisting, but to take care they shall not be exposed to any temptations whatsoever." Judging by this rule, the witness must be repelled from giving testimony.

Messrs. Ingersoll, Lewis and Heatley *è contra pro repub.* This is a question highly important to the community; much property is now circulated in paper, and if an unusual strictness of evidence is to be adopted, it will ill suit the present time.

The first ground of exception is a mere *sophism* a *petitio principii.* It assumes the position, that *Heister* is brought to impeach *his own* instrument, whereas in fact that is the very point in question. The rule, however, at best is questionable. Its universality has been restrained at first to mere negotiable instruments; 3 Term Rep. 32, 34, 36; and now the rule itself is doubted    5 Term Rep. 579.

As to the second ground, the acts for reformation of the penal law have prescribed the penalty in offences of this nature. But previous to the alteration of the criminal code no instance can be shown where the judgment has pursued the acts of 12 Will. 3, or 4 Ann. (*quod curia concessit.*) A party interested will be admitted in a criminal prosecution in most instances. Bull. 288, 4to. edit. 283. But it is denied that there is any interest in the witness. · The verdict on this indictment cannot be given in evidence in any future trial between the parties, and under the judgment, the prosecutor cannot derive any certain benefit. 3 Term Rep. 32, 36. It is agreed, that under the old cases, the party could not be admitted a witness, though in 1 Vin. 49, one imposed on to give a warrant of attorney was allowed to give testimony. But in more modern times, the line between competency and credibility has been correctly traced, and objections of this kind are now confined to the credit of the witnesses. 1 Term Rep. 300. In the case of Abrahams *v.* Bunn, all the cases were cited and fully considered, and since that resolution, no instance can be produced where the drawer or indorser of a promissory note has been rejected in questions of this nature. 4 Burr. 2252. One being interested in the question trying, is no longer removed from giving evidence. 3 Term Rep. 32.

In this state, the point now agitated has been long thought at rest. A variety of adjudications both before and since the revolution, had settled the question. In Rex. *v.* Bates and Chapman, on an indictment for a cheat in playing with false dice, and tried in the Mayor's Court July sessions 1772, Henry Barnhold, the person defrauded, was admitted a witness, after *long* argument. (A copy of the report of the case taken by Allen, then attorney general, was read by the counsel.) So in the Court of Oyer and Terminer at Philadelphia in October sessions 1784, in Respublica *v.* Keating, on an indictment for forging a promissory note and indorsment, payable to John Meng; the indorser was allowed to be sworn, on exception taken to his testimony. Dall. 110; (and the record of the conviction was produced in court.) The same point was afterwards determined in the Court of Quarter Sessions of Northampton county in Respub. *v.* Joseph Smith, and in the Mayor's Court of Philadelphia in Respub. v. Sheppard.

After such solemn decisions, the court will not on slight grounds, overturn precedents established with so much deliberation.

M'Kean, C. J. All the cases of invalidation in the books,

go on this ground, that the party is produced to overturn his own instrument; and if Mr. Heister had subscribed the note, he certainly would be no witness to gainsay it. But is not this the very matter in dispute?

The opinions of judges ought unquestionably to weigh greatly with their successors; but where the principles they lay down cannot be acceded to, a difference of sentiment must necessarily take place; so says Chief Justice Vaughan. It is agreed on all hands that the verdict here cannot be given in evidence in a civil action on the note. How then is Heister interested in the event of the prosecution? In Rex v. Whiting. 1 Salk, 283, on an indictment for a cheat in procuring a note from H. by some slight, H. was not allowed as a witness, (Vid. Cas. Temp. Hardwicke 359,) and the reason given was, that though it was no evidence in a subsequent civil suit, "we are sure to hear of it to influence the jury." But why are we sure to hear of it? It is the duty of the court to oppose themselves to such an attempt; they ought to repress every insinuation tendering to mislead the jury, and at least preserve them from an undue bias in the face of the whole country.

It seems to me, that the resolutions of the courts of this government in this particular, are founded on more substantial principles than those which have been cited by the defendant's counsel from the English books, and conduce more to the interests of society. Above two centuries ago, few of the nobles or gentry of Great Britain could write their names, and hence sealing and delivery of deeds became necessary. The law changes with the times; and since men at present are expert in imitating the signature of others, it becomes expedient, in order to detect frauds of this nature, to admit the testimony of the parties, whose hands have been charged to be forged, and leave their credibility with the jury.

Shippen, J. I think the witness should be admitted, but not for the reasons assigned.

The cases in Hardress and Strange are express, that the evidence should be rejected. So are the compilers, Sergeant Hawkins and Lord Chief Baron Gilbert; and I know of no contradictory resolution in the English books. In all cases of forgery in England, where the party injured has been allowed to swear, he has had a release to entitle him as a witness. Whether the policy of the law there is right or wrong I will not presume to determine. On the one hand it might be deemed dangerous in a commercial country, to allow the persons whose names are subscribed to notes, bills or receipts, to impeach or shake their credit; on the other hand, it might be

thought necessary to call forward every species of evidence, to prevent the forgers of false papers from passing with impunity. If the adjudications in England rested merely on the ground, "that a jury in a civil suit would most probably hear of the verdict," I confess the reason assigned would appear to me but feeble. But other and better reasons may be assigned. The notoriety of the punishment in offences of this kind, would most probably prejudice the public mind with an impression that the instrument was false and counterfeit, and such impressions are not easily effaced. The difficulty of obtaining a fair trial under such circumstances is very obvious.

The principal however may appear doubtful. My ground of concurrence is, that as such evidence has heretofore been received in this government, on solemn argument, we should adhere to those resolutions, to preserve an uniformity of decision.

Yeates, J. It appears to me that the witness is competent.

The objection that the witness is brought to impeach his own instrument has been fully answered. It rests on a fallacy, and presupposes the note to have been signed by Heister, which is the very fact to be tried.

The exception taken on the ground of interest is not well founded. Heister can derive no advantage certain from the judgment, nor can the verdict on the indictment be received in evidence in another suit. I agree that the general current of the English authorities, before the case of Abrahams v. Bunn, (4 Burr. 2252) has been adverse to such testimony; but I cannot bring myself to believe, that the reason given for the rejection is a sound one. The case of Abrahams v. Bunn, seems to have established a different doctrine, and confined the objection to the credibility of the witness.

Be this as it may, the decisions of our own courts have been uniformly different from the doctrine contended for by the defendant, and it is of the utmost consequence to the community, not to deviate from resolutions established on mature consideration. To the cases which have been thus determined, may be added that of Republica v. Thomas Wright, before the Chief Justice and myself at Newtown, May assizes 1794, where on, an indictiment for uttering a forged indenture, Daniel Thomas, the party injured, was received as a witness on argument.

Under these determinations, I think the law is fully established in this state, and that the exception must be restrained to the credit of the witness, of which the jury should judge dispassionately under all the circumstances.

*Smith*, J.   I concur with the Chief Justice ; and I have no hesitation in saying, that independent of the cases cited, which have been adjudged in Pennsylvania, Joseph Heister should be admitted as a witness.   And he was sworn accordingly.

Jacob Morgan was then offered as a witness, with a full admission of his responsibility to pay the forged note which he had indorsed ; and was excepted to.

It was contended on the part of the prosecution, that he had no interest in the event of the suit.   If the defendant was convicted, Morgan must, notwithstanding, pay his indorsement ; and he could neither recur to Heisler nor Smith, whose signatures have been proved to be counterfeited, and therefore he could gain nothing on such conviction.   Should the defendant's acquittal take place, it will not be pretended that Morgan can either gain or lose thereby.

But by the court.   The witness is within the policy of the rule of evidence, as laid down in 1 Term Rep. 296, 300, and as narrowed down in 3 Term Rep. 34, 36.   He has given colour to the note by his indorsement, and shall not now be allowed to impeach or invalidate it.   In the present aspect of the business, he cannot be received as a witness.

The court being adjourned, it was proved in the afternoon of the day, that Morgan had secured the payment of the 1470 dollars by a new note to Thomas Allibone the indorsee, who had delivered him up the instrument charged to be forged, with his indorsement thereon.   Whereupon the court without any difficulty, admitted him to be sworn.

The jury after a long trial, convicted the defendant of the fifth count, and acquitted him of the other five counts in the indictment.

The defendant's counsel afterwards moved in arrest of judgment, and insisted that no indictment would be good, which did not contain the proper terms of art.   2 Haw. c. 25, § 35.   Here is no place or venue laid where the offence was committed, except as to the mere conspiracy, and that connected with the false color and pretence, which ought to have been set forth.   2 Stra. 1127.   Some place must be shown, where the offence was committed.   2 Haw. c. 25, § 83.   And in criminal cases, though the county be in the margin, yet the place where the fact is supposed to be done, must in the indictment be laid in *com. prædicto; aliter* in civil cases.   3 Wms. 496.   Exception may be taken to the want of a place, in

arrest of judgment. 4 Black. Com. 375.   There can be no latitude in laying a charge of this nature. A defective indictment is not aided by verdict.   The statutes of *jeofail* do not extend to criminal prosecutions.   2 Burr. 1127. 2 H. H. P. C. 193.

It is not alleged, that the defendant of Langford Herring did any particular act at any place, to carry the conspiracy into execution ; nor that they knew that the note was forged, which was indispensibly necessary.   In an action for keeping a dog used to bite, the scienter is held to be material.   Indictment for selling as two chaldron of coals, a less quantity, was quashed on motion.   3 Burr. 1697.

The counsel for the commonwealth admitted, that if there was no venue, it might be objected, even after verdict.   But they contended, 1st. That the conspiracy itself was an an indictable offence, though nothing be done in prosecution of it, and the venue must be where the conspiracy was, not where the result of the conspiracy is put in execution. 1 Salk. 174. 1 Stra. 193 to 196.   Leach's Crown Cas. 38, 39.

2d. That upon a fair construction of the indictment, the whole offence laid in the fifth count, is stated to have been perpetrated in the city of Philadelphia.   It is charged that on the 17th day of August 1793, the conspiracy was had at the city aforesaid, and in the conclusion, the words then and there, are applied to the counterfeited note.   The city and the 17th day of August, are the unity of place and time, to which the whole count must refer.

In an indictment for a cheat, it is admitted, that the false tokens must be set forth ; but it is otherwise in a conspiracy, which is an independent offence, and in itself indictable.

There are sufficient words in the indictment to show the defendant's knowledge of the note being counterfeited, which they procured him to indorse.

The court gave no opinion on the motion in arrest of judgment, but continued the same under advisement.

The defendant afterwards indemnified Jacob Morgan fully, and the jury having recommended him as an object of mercy, when they delivered in their verdict, a *nolle prosequi* was entered on the indictment on the 20th March 1796, by the attorney general.