### AT A SPECIAL SESSION HOLDEN IN COLUMBUS, DEC., 1831.

---

### BENJAMIN HESS *v.* THE STATE OF OHIO.

Teller of a bank competent witness to testify concerning the handwriting of president and cashier.

Persons skilled in a knowledge of handwritings competent to testify concerning them, although they never saw the parties write.

Whether a bank note offered in evidence on an indictment for counterfeiting be subscribed H. or N. Biddle is a question of fact, and the decision upon it can not be raised in error, unless the note accompanies the record. *Quære*, if it can be alleged as error.

An indictment for counterfeiting need not set out an indorsement upon the counterfeited paper.

In prosecution for having counterfeit notes in possession, proof that other counterfeits were found secreted in prisoner's house, and in possession of his wife, is admissible.

Indictment against two, one only put upon trial. It is not error if it can be justly inferred from the record that an order for a separate trial was made, though it does not appear in form upon the record. Two may be joined in indictment for having counterfeit notes in possession.

VOL. V—1                                              1

An indictment for having counterfeit bank notes in possession, and for making sale of them, need not charge that the sale was for a consideration, or to the injury of any one, or that the notes were indorsed. And if such acts are charged to be felonious, it is not error.

THIS cause came before the court upon a writ of error to the court of common pleas of Clermont county, and was adjourned for decision at Columbus. It was submitted without argument. The case is fully stated by Judge WRIGHT, in the opinion of the court delivered by him.

Judge WRIGHT:

Hess, the plaintiff in error, was indicted in the court of common pleas, jointly with one Hoyt, upon several charges:

1. For feloniously selling and delivering to one Steele a counterfeit *bank note*, purporting to be a check from the Bank of the United States branch at Cincinnati upon the Bank of the United States, signed J. Reynolds, president, and P. Benson, cashier, for five dollars, and payable to order, knowing it to be counterfeit.

2. For the feloniously selling and delivering to Steele a counterfeit note, purporting to be a twenty-dollar note issued by the Bank of the United States, payable to order, and signed by H. Biddle, president, and W. McIlvaine, cashier, knowing it to be counterfeit.

3. For having in possession, for the purpose of selling, etc., divers counterfeit notes, viz: two twenties, purporting to be of the Bank of the United States, issued by H. Biddle, president, and W. McIlvaine, cashier, and payable *to order;* and a five-dollar check from the United States branch at Cincinnati upon the Bank of the United States, and signed J. Reynolds, president, and P. Benson, cashier, and payable to order, knowing them to be counterfeit.

The first two charges were framed upon that clause of section 29 of the act for the punishment of crimes, vol. xxix. 141, which provides a punishment for any person who "shall sell, barter, or in any manner dispose of any false, forged, or counterfeit bank note or notes." The third charge is framed under that clause of the same section providing punishment for any person who "shall be detected with any such bank-notes in his possession, for the purpose of selling, bartering, or disposing of the same."

During the trial of this cause, several bills of exception were

tendered and signed by the court. After verdict, objections were made in arrest, but the court sentenced the defendant to confinement in the penitentiary for three. years, the shortest time known to the law. The case here presents two classes of errors, which, it is claimed for the prisoner, vitiate the sentence of the court— those attending the admission of evidence on the trial, and those appearing on the record. I will consider them in their order:

1. Upon the trial, one Gano was called as a witness for the prosecution to prove the counterfeit character of the twenty-dollar notes. He testified that he had never seen the president or cashier write, but was a teller in the Cincinnati branch, and had frequently seen notes, letters, etc., received in the branch bank as genuine, with their signatures. He was then allowed to give his opinion to the jury that the notes were counterfeit. In this the prisoner claims the court erred. It is esteemed settled law that persons of skill may give their opinions, in evidence, in criminal cases, whether the particular handwriting on the instrument alleged to be forged is not true and genuine or forged and imitated, *because it is said a judgment upon such points may be formed [7 by habit and experience. 2 Stark. Ev. 570–586; Peake Ev. 35; 4 Esp. Cas. 117.

2. The same witness was called for the prosecution, and permitted to testify to the counterfeit character of the five-dollar checks, issued at Cincinnati. This was objected to, because better evidence was within reach of the power of the court, the president and cashier residing in an adjoining county. In admitting this evidence, the prisoner alleges the court erred. In England, a witness, whose name appears upon forged paper, and who is interested in setting aside the instrument, is not permitted to give evidence to prove the fact of forgery, though such person is held a competent witness to prove all collateral matters on the trial. 3 Stark. Ev. 584, 585; 2 N. R. 88; 2 Leach 987; 2 East, C. L. 995. But this is held not to extend to cases where the witness has no real interest in the conviction; thus the cashier of a bank, or other mere agent, may be called to prove the signature to a bank note not to be his, because he is, in fact, a mere indifferent party, who has no interest of his own. 1 Leach, 311; 3 Ch. C. L. 1043. But although you may call the agent, etc., you need not unless you please. 2 Stark. 585. The English rule that excludes a party whose name is forged from testifying to establish the forgery,

3

is adhered to in Connecticut, Vermont, New Hampshire, Pennsylvania, and North Carolina. 1 Root, 30, Swift's Ev. 70; 1 Tyler, 260; 1 N. H. 7; 2 N. H. 43; 3 N. H. 84; 2 Dall. 239; 2 Yeates, 1; 2 Hayw. 288. In these states, the practice has been uniform, we believe, to admit such witness, and also to admit the evidence of others skilled in examining signatures and notes. We see no reason for changing the rule. And the objection that secondary evidence is substituted for the *best,* does not apply to the case, since there is not such a distinction between one whose knowledge is of his own handwriting, and the knowledge of another's on the same subject, as constitutes the former evidence of a superior degree to the latter. 2 Stark. Ev. 586. The English rule was adopted in New York, 1794; but in 1809, in the People *v.* Howell, 4 Johns. 296, Ch. J. Kent says, since that time, the question of interest in a witness, *has been investigated and defined with more precision, both in England and New York; that the exclusion of the party, in cases of forgery, has become an anomaly in the law of evidence, and it would seem to be fit and proper that the rule should be no longer applied.

3. Again, it is urged the bills offered to the jury varied from those described in the indictment, and so were improperly admitted to the jury. The variances now relied upon are: 1: In the signature of the president of the bank, the indictment describing a note signed H. Biddle, and the notes offered in evidence, bearing the name N. Biddle affixed to them. 2. That the notes offered to the jury were indorsed in these words, "pay the bearer, Thos. Wilson;" whereas the notes described in the indictment were not described as having any indorsement thereon. As to the first variance, the bill of exception shows that the court decided, that according to their judgment, the letter before Biddle, in the signature of the notes offered, was H., not N. The notes are not returned with the record, and we have no means of determining whether the court erred in judgment or not. It may be proper, however, to say in reference to this objection, that if the court did err, it was as to a matter of fact, and not of law. The question was properly submitted to the court to determine upon, as preliminary to the sending the notes to the jury; and the record shows their opinion to be, the letter was H., not N. How can we revise this opinion? Certainly not without the evidence was submitted to us—even if we then have a legal right to correct errors

Hess *v.* State of Ohio.

·of fact, of this kind, which every court must decide for itself, the accuracy of which the jury can examine into also. The rule doubtless is, that where the instrument is set out, as in this indict-ment, is its tenor or words, and not the purport only, the prosecu-tion in held to strict proof, and the instrument offered, must appear ·on its face to be the same instrument described.

The omission to describe the indorsement on the note, and the appearance of the words, " pay the bearer, Thos. Wilson," on the back of the note, does not, in our opinion, present a question of variance. The indictment charges the defendant with having in possession divers counterfeit notes, *and then sets out the face [9 of the notes. The indorsement is not alluded to at all. The note might be counterfeit, and the indorsement genuine. The indorse-ment is not more a part of the note than the number, the figures in the margin, or the water-marks, and they need not be set out. Even in an indictment for forging a promissory note, the indorse-ment need not be set out, for it is no part of the note. 2 Mass. 393–397 ; 1 Mass. 62, 203. Neither shall it be required to set these things forth in an indictment for having them in possession. The variance objected to is not perceived. Other objections are made in the bill of exceptions; as that in the motto, alleged in the in-dictment to be "*pruribua unum*," when on the note the words are ·"*pluribus unum.*" But these are not assigned for error, and are clearly of no consequence.

· 4. On the trial, the prosecutor, " to prove the guilty knowledge of the defendant, with respect to the bank notes described in the indictment," called a witness to prove that three days after the arrest of the prisoner, and while he was in jail, he found in an auger hole bored in a log of a house, within a few feet of the dwell-ing of the defendant, and which had formerly been his dwelling, two bank bills, which he produced; and the prosecutor claimed ·they were counterfeit, and they were suffered to go to the jury ; .and also called another witness, who stated that the evening after the defendant was arrested, he, the witness, went to his dwelling house, and took from the hands of his wife, a purse, which she said ·belonged to her little boy, which contained sixty dollars of coun-terfeit bank notes, which being produced, were suffered to go to the jury. In these instances it is objected that the court erred also; and that as to both matters the testimony was improper; .and in the last, in permitting the statement of the wife to be given

in evidence to convict her husband, it is said, "violates all law, common sense, and common justice." If it be true that the court below has committed an error of this character, it should be speedily corrected. It can hardly be deemed necessary at this day to go into any course of reasoning to prove that circumstantial or pre- sumptive evidence is allowed to prevail, even to the convicting of 10] an offender. In the language of *the writers on evidence, "it is essential to the well-being, at least, if not to the very exist- ence of civil society, that it should be understood that the secrecy with which crimes are committed will not insure impunity to the offender." 1 Stark. Ev. 479. Such evidence is allowable, because it is, in its own nature, capable of producing the highest degree of moral certainty. Crimes of any magnitude are rarely committed without affording vestiges by which the offender may be traced; and very often the means he adopts for his security turn out to be the most cogent arguments of his guilt. 1 Stark. Ev. 480. There should, however, be a connection between the circumstance and the fact to be inferred; and the circumstance should tend to the conclusion which is intended to be deduced by the aid of reason and experience. Let us test the evidence in question by this rule. The prosecutor designed to convince the jury that the defendant knew the bank notes he had were counterfeit; and does it not strike every one at once that the finding other spurious notes of considerable amount about his house, secreted in the crevices of the logs, and in the hands of his wife, is a strong circumstance, unexplained, to conduct the mind to the conclusion that he knew of their bad character? It seems to us the evidence was compe- tent and relevant. To what extent it would affect the jury, is not for us to inquire. Is the character of these circumstances changed by the declaration of the wife, testified to in the hearing of the jury? We can not see that they are. No one pretends that the declaration of a wife can be given in evidence, in such case, for or against her husband. It does not appear by the bill of exceptions that it was objected to until after given; but that is not very ma- terial. The wife's declaration was an incidental statement of the witness, no way material to the facts testified, and could not have influenced the jury to convict. Stripped of the declaration that the purse belonged to her little boy, the circumstances remain in full force. Connected with it they are neither enlarged nor diminished.

5. It is objected to the arraignment and trial of the defendant,

Hess v. State of Ohio.

and the finding of the jury : 1. That Hess and Hoyt were ar-
raigned and pleaded *jointly*, and that Hess was tried separately,
without any further plea or order of court *for such separate [11
trial. · 2. That Hess was found guilty, and Hoyt not noticed in the
verdict, contrary to the issue and oaths of the jury. The record
shows that Hess and Hoyt, being both arraigned, plead not guilty;
and that immediately thereafter, Hess, the plaintiff in error, filed
an affidavit, stating that the wife of his co-defendant, Hoyt, was a
material witness for him ; and that he believed he could not have
a fair trial without her evidence, and if tried jointly without the
said Hoyt. Whereupon came the said Hess, as well as the prose-
cuting attorney, and the jury being called, were sworn, to try the
issue joined, and they found "the defendant, Benjamin Hess, guilty
of the first, third, and fifth counts in the indictment charged against
him, and not guilty of the residue of the counts in said indictment
charged." There is no formal order of the court, during the trial
of Hess and Hoyt; but does not the record attain to such certainty,
as to advise any one that he was not only tried alone, and so tried
at his own request, but that the jury were sworn to try him alone,
and passed upon him alone, according to their oath. It is urged
that their offense is in its nature several, and that two can not be
jointly indicted and convicted. We do not see the force of this
objection. Could not several persons have a joint possession of
bank notes as well as a joint property ? · Can not persons jointly
possessing property jointly sell it ? When two go into a shop to
steal, a third, who stays on the outside to watch, and co-operate,
is a principal. 1 H. P. C. 462. So, if A. and B. be present, con-
senting to a robbery or burglary, though A. only actually does the
act, while B. watches in another place, both are robbers and bur- ·
glars. ·1 H. P. C. 537; 1 Foster, 350. And·in general, if several
unite in one common design, to do some unlawful act, and each
takes the part assigned to him, though all are not actually present,
yet all are present in the eye of the law. Foster, 450, 353 ; 1 Hale
P. C. 439; 2 Stark. Ev. 7. If these cases are law, and it will hardly
be disputed that they are, there will be but little difficulty in de-
termining the question of joint and several possession and dispo-
sition of their counterfeit notes, and the joint or several guilt of
those concerned.

*6. I will now consider the objections urged to the suffi- [12
ciency of the indictment. The first has been considered in the

last proposition examined, and we do not feel the necessity of adding anything on that point. The second is, that the sale of these notes is not alleged to have been made to the injury of any one; and is, therefore, not within the statute. 3. That it is not charged that the sale was for any consideration paid by the purchaser, and so no sale in point of law could exist. 4. The notes set forth are payable to order, and are not alleged to have been indorsed, and so are not currency. 5. That the offense is charged to be feloniously committed, when the act of assembly makes no such definition. Was it necessary to charge the sale of these notes to have been to the injury of any person? The forging of any record, note, contract, etc., with intent to damage or defraud any person or persons, body politic or corporate, and the uttering such instruments with the like intent, are punished as offenses by our statute. 20 Ohio L. 139, 140. The counterfeiting coin currently passing in the state, and uttering such coin, knowing them to be such, and the making any instrument for counterfeiting such coin, are distinct offenses. 29 Ohio L. 141. The sale, barter, or disposition of counterfeit bank notes, or the being detected with such notes in possession, for the purpose of selling, etc., are distinct offenses. Forgery, at the common law, was considered only a species of fraud, and might be committed of any writing by which another might be defrauded. Yet the distinction was marked out between forgery and fraud; and forgery was held complete, though no one was actually injured, if the tendency and intent to defraud were manifest. 3 Ch. C. L. 1022. The fraudulent intent appears of the essence of this offense, and is particularly expressed in the statute of 5 Eliz., c. 14, and in most if not all the other acts. 2 East C. L. 854. Hence, the indictment for forgery charges the intent as part of the offense, and that must be proven. The offense charged in this indictment is of a different character. The legislature, it has been shown, has retained the intent to defraud as part of the definition of forgery, while it has rejected that intent as an ingredient in either of the offenses described in the indictment under consideration. It was *within the power of the legislature to define the offense. It is the general rule, applicable to all statutory offenses, that an indictment must set forth the charge in the words of the statute describing the offense. 2 East C. L. 985; 1 Hawk. 26, ch. 70; 2 Hawk. 110, ch. 25; 3 Inst. 13. The same question has been decided in this court. 4 Ohio, 387.

Hess *v.* State of Ohio.

It would seem, then, that as the law has not made it necessary to these criminal acts that they should be done with intent to injure, an allegation of such intent is unnecessary. The same remark applies to the want of an allegation that the sale was for a consideration paid.

The next objection urged is, that the notes set forth are made payable to order, and are not alleged to have been indorsed, and so were not currency. I have before shown that, upon the authorities, the indorsement is not considered in law any part of the note. 1 Mass. 62, 203; 2 Mass. 373, 379. It is of no consequence, even in forgery, whether the counterfeited instruments be such as if real would be effectual to the purpose it intends, so long as there is sufficient resemblance to impose on persons of ordinary observation, though persons of experience could not be deceived by it. 3 Ch. C. L. 1035; 2 Stark. Ev. 579. The next objection is, that these notes are charged in the indictment to have been feloniously made, when the statute makes the offense a misdemeanor. The statute does in terms declare the person offending shall be guilty of a misdemeanor. The attorney, in drawing this indictment, has introduced this word from the English forms. It seems to us to have no application in describing the offense set forth in the indictment, and that it may be rejected as mere surplusage, its presence doing neither good nor harm. If feloniously supposed in the accused greater moral turpitude than is necessary to constitute a misdemeanor, this jury have found it in this case, and the greater must include the lesser guilt.

I have, I believe, waded through all the objections taken for the plaintiff in error. In this no aid has been given by counsel on either side; neither abstract nor brief of argument has been given us. While courts should take care that persons accused of crimes are secured in all their legal *rights, it is due to the com-  [14 munity to see that those substantially charged with crimes, and found guilty, shall not escape punishment by reliance upon technicalities and forms, multiplying the chances of escape, and holding out the prospect of impunity to guilt as an inducement to venture the commission of crime. We see no error in the proceedings of the court in the case before us.