AUTREY *v.* STATE.

Opinion delivered June 8, 1914.

1. APPEAL AND ERROR—INSTRUCTION—HARMLESS ERROR.—An erroneous instruction will not call for a reversal of a cause, when no prejudice resulted from the giving of the same. (Page 351.)

2. LARCENY—SUSPICIOUS CIRCUMSTANCES—QUESTION FOR JURY.—Where there were suspicious circumstances surrounding defendant's conduct, and defendant undertook to show that, although the crime of larceny had been committed, that he had no guilty part in its commission, it is the province of the jury to determine whether or not any of these statements were false, contradictory or improbable, and, if so, the jury may consider that fact in determining the guilt or innocence of the accused. (Page 351.)

3. INSTRUCTIONS—ISSUE COVERED IN OTHER INSTRUCTIONS.—It is not error to refuse to give a correct instruction, where the question is covered by another correct instruction given by the court. (Page 351.)

4. LARCENY—ASPORTATION.—Driving a steer from the field of the owner into a lot where it was subsequently killed, is a sufficient asportation to constitute an element of the crime of larceny. (Page 352.)

5. LARCENY—SUFFICIENCY OF EVIDENCE.—Evidence that defendant drove a steer into a lot for the purpose of killing it, which was done under cover of darkness, and that defendant was present at the killing, and if he did not do it, advised that it be done, and encouraged and assisted those who did it, is sufficient to warrant a verdict of guilty of larceny. (Page 352.)

6. EVIDENCE—RES GESTAE—INTENT—PROOF OF OTHER ACTS.—On the question of intent, or of the *res gestae*, proof of the stealing of other property than that for which the defendant is on trial may be admissible, and in a prosecution for the theft of a steer, evidence of the theft of a hog at the same time is admissible, as showing the intent of the defendant. (Page 352.)

Appeal from Franklin Circuit Court, Ozark District; *Jeptha H. Evans,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant was convicted of the offense of grand larceny, under an indictment charging him with stealing a certain steer, the property of one D. Jordan. The evidence in the case was circumstantial, and its sufficiency is challenged upon this appeal.

The evidence upon the part of the State was substantially as follows: That Mr. Jordan missed his steer and began an investigation to locate it, and found where the animal had been killed 300 or 400 yards inside of a field belonging to appellant's father. He found there a head, foot and some entrails up in an uncleared piece of ground. This was the next day after he had learned that one of his cattle had been killed. He went to Mulberry to see if he could find any trace of his animal and learned that the appellant had been to Mulberry in company with a man named Masterson and another named Mankins, who were jointly indicted with appellant for the larceny of this animal. While at Mulberry he learned that these men had sold a certain hide, and, upon examination of it, found the marks, brand and color to correspond with the animal he had lost. The proof shows the animal to have been killed some time between Saturday night and Tuesday morning, as it had rained Saturday night, and all of the tracks, and other signs about the place where the animal was found, appeared to have been made since the rain. The proof on the part of the State further tended to show that appellant had driven this steer into his father's field, together with a number of other cattle, on Sunday night, and that about the time this animal was butchered a hog belonging to a Mr. Brammer was also killed, and that both the steer and the hog were loaded in a wagon belonging to Mankins and Masterson, and that these men, with appellant, drove the wagon into Mulberry and there sold the hog and the hide of the steer; and that they thereafter peddled the beef. There is no proof that any money was actually paid appellant; but he rode in the wagon containing the meats and was present at the sale of some of it. And the proof further tends to show that when he left home he had only twenty-five cents, but after the sale of this meat he went to Fort Smith, and upon his return had two quarts of whiskey which he purchased while there. But he stated that this whiskey had been bought for his mother, who had given him the money for that purpose.

Near the place where the beef had been butchered there was found a hand saw belonging to Masterson, which was bloody and had evidently been used in butchering the beef, and both Mrs. Masterson and Mrs. Mankins, who lived together, testified that their husbands and appellant left their home early Monday morning before breakfast, and that shortly after their departure appellant returned and secured the saw.

Appellant admits driving the steer into his father's field on the Sunday preceding the killing of an animal in that field, but he said that this was done because the animal was with other cattle belonging to his father, which he had been ordered to turn into the field, and that he was unable to separate this steer from the other cattle, and it was only on that account that it was turned into the field.

At the trial appellant requested the court to give the following instructions, numbered, respectively, 1, 2 and 3.

1. Before you can find the defendant guilty of the charge brought against him by the indictment, you must find from the evidence beyond a reasonable doubt that the defendant was present at the time the animal was stolen. If this does not appear from the evidence beyond a reasonable doubt, then it becomes and is your duty to return a verdict of not guilty.

2. Before you can find the defendant guilty of the charge brought against him in the indictment, you must find that there was some movement or asportation of the steer mentioned in the indictment by the defendant with the felonious intent to convert the said steer to his own use. If this does not appear from the evidence beyond a reasonable doubt, then you will return a verdict of not guilty.

3. Should you believe from the evidence that the defendant killed the steer for the purpose of stealing it, then under this indictment it becomes and is your duty to return a verdict of not guilty.

But the court refused to give any of these instructions.

The court gave, over appellant's objection, an instruction numbered 8, which read as follows:

8. If there are suspicious circumstances against the defendant, developed in the evidence, and if the defendant has made false, contradictory or improbable statements in explaining or attempting to explain such circumstances, then the jury may consider such false, contradictory or impossible statements, if the defendant made such statements, in determining the guilt or innocence of the accused of this charge.

And the court also gave an instruction, No. 7, as follows:

7. If defendant did not himself steal the steer and was not present when the same was stolen, if the steer was stolen, aiding, advising, abetting, encouraging or assisting in such stealing, then the defendant is not guilty and should be acquitted.

Upon the verdict of the jury appellant was sentenced to imprisonment in the penitentiary for a period of one year, and has appealed from that judgment.

*Sam R. Chew,* for appellant.

1. The verdict is wholly unsupported by the evidence. Possession of the beef is not sufficient. 102 Ark. 331; 34 *Id.* 443; 91 *Id.* 933; 44 *Id.* 39.

2. The court erred in its charge to the jury. 69 Ark. 134; 96 *Id.* 206; Kirby's Dig., § 1627.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

There is no error in the instructions and the verdict is supported by the evidence.

SMITH, J., (after stating the facts). Appellant complains of instruction No. 8, set out in the statement of facts, and says that it was erroneous and prejudicial because it contains a comment upon the evidence. We think the instruction was an improper one, but we can not say that it was prejudicial, as there were circum-

stances which were not only suspicious but which are, in our opinion, legally sufficient to sustain a verdict of guilty; and, as the defendant undertook to explain away these circumstances and to show that, although the crime of larceny had been committed, that he had no guilty part in its commission, it was the province of the jury to determine whether or not any of these statements were false, contradictory or improbable, and, if so, the jury had the right to consider that fact in determining the guilt or innocence of the accused. This instruction did not tell the jury the weight to attach or the effect to give to their finding, if one was made, that defendant had made false, contradictory or improbable statements, but told them merely that if they so found, they might consider that fact; and we conclude, therefore, that the instruction was not prejudicial.

The instruction No. 1, requested by appellant, was a proper instruction under the allegations of the indictment, and might very well have been given, but the purport of this instruction was to charge the jury that it was necessary to find that the defendant was present at the time the animal was stolen, and if that fact did not appear from the evidence beyond a reasonable doubt, that they should return a verdict of not guilty. But the instruction numbered 7, given by the court, so stated the law to be, and the jury could have been left in no doubt that they must find, before they could convict the defendant, that if the defendant did not himself steal this steer, he must have been present when the same was stolen, aiding, abetting and assisting in such stealing.

The second and third instructions requested by appellant deal with the question of asportation, and were both refused by the court. The court gave an instruction in the language of the statute, defining the crime of larceny. And under the facts of this case, we think there was no error in refusing to give the requested instructions, if they were conceded to be correct declarations of law, because they were abstract. Appellant does not deny driving the steer into his father's lot; and this was,

of course, a sufficient asportation to constitute the crime of larceny. It is true, he says, there was no connection between that act and the subsequent killing of the animal; but that was the chief question at issue in the trial, and the verdict of the jury is conclusive upon that question of fact. The jury must have found that appellant drove the animal into the lot for the purpose of subsequently killing it, and that this was done under the cover of darkness at the first favorable opportunity, and that he was present when it was killed, and that, if he did not himself kill it, he advised that it be done, encouraged and assisted those who did it, and this evidence, if true, is sufficient to sustain the allegation of asportation.

Appellant also complains of the action of the court in refusing to exclude the testimony of the witness, Charles Brammer, in regard to the loss of a certain hog owned by him. But, as has been stated, the proof shows that the hog was killed and butchered at about the same time and near the same place that the steer was, and that both animals were loaded into the wagon and taken to Mulberry, and this evidence is competent as bearing upon the question of appellant's intent. In Rapalje on Larceny and Kindred Offenses, § 200, it is said: "On the question of intent, or if of the *res gestae,* proof of the stealing of other property than that for which the defendant is on trial may be admissible. Thus, in a prosecution for the theft of a horse, it is not error to admit testimony as to the contemporaneous theft of a saddle and other articles, in the same neighborhood, where the court charges the jury that such evidence can not be considered as tending to show the theft of the horse, but only as tending to show the intent of defendant in whatever action they may find from the evidence was done by him. And on trial for cattle theft, evidence of the theft of others than those charged may be considered, if alike involved in the *res gestae,* to show guilty knowledge and intent."

And in section 201 of the same text, it was further said: "Under an indictment for larceny, evidence of the

subject-matter of another indictment for larceny may be admitted where the two offenses are so connected as to be parts of the same transaction; as where two horses belonging to different persons are stolen by conspirators in pursuance of a previous design."

Finding no error, the judgment of the court below is affirmed.