McCoy v. State.

Opinion delivered January 14, 1924.

1. FORGERY—VARIANCE.—An indorsement on a check is no part of the check itself, and need not be set up in an indictment alleging forgery of the check.

2. CRIMINAL LAW—OPINION OF EXPERT.—A handwriting expert in a forgery case may testify that he has compared the check alleged to have been forged with defendant's signature, and that, in his opinion, such check and another check were forged by defendant.

3. CRIMINAL LAW—PROOF OF ANOTHER CRIME.—Evidence in a forgery case tending to prove that, about a month after defendant cashed the check in controversy, he attempted to cash a second forged check, was competent as bearing on the question of intent.

4. CRIMINAL LAW—PROOF OF VENUE.—Proof of venue in a forgery case is sufficiently established to entitle the State to go to the jury if nothing further appears than that the person charged with the offense is shown to have uttered the forged instrument in the county where the indictment is found.

Appeal from Columbia Circuit Court; *L. S. Britt,* Judge; affirmed.

*Joe Joiner,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter,* Assistant, for appellee.

Wood, J.   The appellant was convicted on an indictment which charged him, in the first count, with the crime of forging "a certain writing on a paper purporting to be a check drawn on the People's Bank of Magnolia, a corporation, which said writing on paper is in words and figures as follows, to-wit: 'Magnolia, Arkansas, 11/22/1922. No.............. The People's Bank of Magnolia: Pay to Tom Williams or bearer $42.75, fo(u)rty-two 75/100 dollars. (Signed) Roy Nipper.' " It was charged that he forged Roy Nipper's name with the felonious intent of defrauding him and depriving him of his property. In the second count he was charged with the crime of uttering such instrument. He was convicted on the first count, and acquitted on the second.

Nipper testified that he did business with the People's Bank of Magnolia, and did not make the check for $42.75 in favor of Tom Williams, which was introduced in evidence. He examined the alleged forged check and read the same as follows:

"Magnolia, Arkansas,    11-22-1922.    No..............
"The People's Bank of Magnolia     81-162
"Pay to   Tom Williams   or bearer    $ 42.75
Fourty-two  75/100  Dollars.

                                "Roy Nipper."

Lyle testified that he was cashier of the People's Bank of Magnolia; that the alleged forged check was cashed at that bank. He did not see Nipper sign the check. The first check, or the Roy Nipper check, was presented in November, and the Saunders check was presented by McCoy in December. Witness saw the Saunders check presented, and saw that it was not his signature, and the negro, McCoy, said he was buying something for Mr. Saunders. Witness went back to see if Saunders had enough to pay the $85.75. The party pre-

senting the check came back to where witness was, and witness told him that Saunders did not sign the check, and the defendant, McCoy, said that he did. Witness refused to pay the check. McCoy said that he was going to the oil-mill and buy something, and that he was driving Saunders' mules; that Mr. Saunders had sent him there. The negro went out, and, after examining the check very closely, witness concluded that the negro was not coming back, and witness went out to find him, but could not. Witness never saw McCoy again until after he was arrested, and witness then identified him. The negro that presented the Saunders check is the defendant, McCoy.

Miss Julia Stevens testified that she was bookkeeper at the People's Bank, and her testimony substantially corroborated that of Lyle. She identified the defendant as being the negro who presented the Saunders check, which the bank refused to pay. She didn't know anything about who presented the Nipper check.

Saunders testified that he didn't sign the check to Williams or McCoy; that the check presented by McCoy, signed with his name, was a forgery. He never authorized any one to sign it.

John B. Lee testified substantially as follows: He was connected with the Farmers' Bank & Trust Company, and had seen the defendant before. He identified a letter and contract, and testified that these documents were written by the defendant. Witness had been working in a bank since 1915, and had to examine signatures, and would have a better idea of signatures than the average man, but he had not become an expert. He had been working in the bank at Emerson as cashier. He examined the alleged forged check and the Saunders check, and compared them with the documents which he testified were signed by McCoy, and stated that he considered that there was a similarity. The body of the checks was not written by the same party who signed the signatures. Witness was asked if he considered the signatures to the checks similar to McCoy's handwriting

and answered, over the objection of appellant, "Yes sir; it is identical."

The defendant, McCoy, testified that he had nothing to do with forging the check signed by Roy Nipper, and did not present the check for payment. He did not forge the Saunders check, nor present that for payment. His testimony and the testimony of witnesses in his behalf tended to show that, at the time the alleged forged check was cashed on the 22d of November, he was working on a house five and a half miles from town. McCoy testified that he had nothing whatever to do with either of the forged checks; had never forged a check in his life.

1. On this appeal appellant contends, first, that the court erred in permitting the State to introduce in evidence the alleged forged check, which was precisely the same as that described in the first count of the indictment, except that the check introduced contained the following notation: "Indorsement as follows: People's Bank, Magnolia, Ark., Tom Williams." The appellant contends that, inasmuch as these words are not contained in the copy of the check set forth in words and figures in the indictment, there was a fatal variance between the indictment and the proof. This was an indictment for forging a check. Our statute makes it a felony to forge any check or draft upon a bank, or any indorsement thereon. Section 2463, C. & M. Digest. But the indictment in this case was for forgery of the check. It is not a charge for forging an indorsement on the check. "An indorsement on a check is no part of the check itself, and need not be set up in an indictment alleging forgery of the check." *U. S.* v. *Peacock.* 1 Cranch 215; *Commonwealth* v. *Ward.* 2 Mass. 397; *State* v. *Carrigan*, 210 Mo. 351, 16 L. R. A. (N. S.), 561, 109 S. W. 553, and other cases cited in case-note to *People* v. *Tilden,* 31 L. R. A. (N. S.), 217, "Indorsements." See also *Beer* v. *State,* 42 Tex. Crim. 505, 60 S. W. 962, 96 A. S. R. 810; *State* v. *Tutt.* 2 Bailey Law (S C.), 44, 21 Am. Decisions, 508; 12 R. C. L.

158, § 21; *Hess* v. *State*, 5 Ohio 5, 22 Am. Decisions, 766. The cases of *McDonnell* v. *State*, 58 Ark. 242; *Bennett* v. *State*, 62 Ark. 516; *Zachary* v. *State*, 97 Ark. 176, are all cases where the crime charged was the forgery, or the forged alteration, of the instrument itself, and in those cases there was material variance between the instrument alleged to be forged and the instrument offered as proof of such forgery. Such is not the case here. The check alleged to be forged and the check adduced in evidence to sustain the charge were, in the body, precisely the same.

2. The appellant next contends that the court erred in permitting the witness, Lee, to testify that he had examined a letter and contract which bore the genuine signature of the appellant, and also had examined the check purporting to have been signed by Roy Nipper, and also the check adduced in evidence, over the objection of appellant, purporting to have been signed by Saunders, and that, from such comparison, the check alleged to have been forged in this case and signed by Nipper, as well as the check alleged to have been signed by Saunders, were, in the opinion of the witness, both forged by appellant. This testimony was competent as a circumstance to go to the jury to prove guilty intent on the part of the appellant. Lee stated facts which warranted the court in permitting his testimony to be considered by the jury as an expert. It was proved that the Saunders check was forged and that the appellant had such check in his possession, and attempted to utter the same, about a month after the Nipper check had been presented and cashed. It was proved that the Nipper check was also forged, and the proof tended to show that it was written by the same man who wrote the Saunders check.

This testimony of Lee was not collateral, but was a circumstance to prove that the appellant was forging and attempting to utter forged instruments. It is generally held that "proof of similar acts of forgery or of uttering is admissible as bearing on the question of the

intent with which the forgery or uttering of forged
paper for which the defendant has been informed against
was forged or uttered.   And the fact that the defendant
was under indictment for the forgery of some of the
instruments so admitted in evidence does not affect their
admissibility in evidence.   Such evidence is never admit-
ted, however, as proof of the commission of the criminal
act for which the defendant is on trial.''   12 R. C. L.,
p. 167, § 30.   See cases.   It is competent only when the
alleged forged papers are shown to have been forged
or uttered under similar circumstances as tending to
show system and intent.   Moreover, the court, in this
particular case, allowed the testimony to be introduced
only for the purpose of identification.

3.   The appellant next contends that the State failed
to prove venue.   Proof of venue is sufficiently estab-
lished to entitle the State to go to the jury if nothing
further appears than that the person charged with the
offense is shown to have uttered the forged instrument
in the county where the indictment is found.   12 R. C. L.
153, § 17.

There is no reversible error, and the judgment is
therefore affirmed.