NORRIS v. STATE.

Opinion delivered February 15, 1926.

1. FALSE PRETENSES—INDICTMENT—DESCRIPTION OF WRITTEN INSTRUMENTS.—Where a written instrument is only a step in the transaction or an incident to the offense of false pretenses, a particular description thereof is unnecessary.

2. FALSE PRETENSES—VENUE OF OFFENSE.—Proof that false representations were made in and mailed from the county of the venue, and that they induced the mailing of a check to that county and its receipt there, was sufficient to establish the venue, though the check was issued from and paid in another State.

3.  FALSE PRETENSES—RELIANCE UPON FALSE PRETENSE.—An indict-
    ment for false pretenses which alleges that the accused, by means
    of an alleged false pretense, induced the party defrauded to
    issue its bank check, sufficiently alleges that the false pre-
    tense induced the issuance of such check.

4.  FALSE PRETENSES—OBTAINING CHECK FOR ANOTHER.—An indict-
    ment which alleges that accused by false pretense induced the
    party defrauded to issue its check to a third person is not demur-
    rable, as the statute (Crawford & Moses' Dig., § 2449) does not
    require that the "valuable thing" shall be obtained for one's own
    self.

5.  FALSE PRETENSES—SUFFICIENCY OF EVIDENCE.—Evidence *held* suf-
    ficient to sustain a conviction of obtaining property by false pre-
    tense.

6.  FALSE PRETENSES—RELIANCE UPON FALSE STATEMENT.—The charge
    of procuring a check from an insurance company by falsely pre-
    tending that an assured was dead was sustained by proof that
    accused, as the insurer's agent, knowingly signed a false state-
    ment of assured's death for the purpose of inducing the insurer
    to issue a check in payment of a fictitious claim.

7.  FALSE PRETENSES—EVIDENCE OF OTHER OFFENSES.—Upon an indict-
    ment alleging that accused by false representations induced an
    insurance company to issue its check for a death loss when the
    person insured was alive, evidence that accused had participated
    in other similar fraudulent schemes to defraud the insurer was
    competent and not prejudicial, where the court charged that the
    testimony was admitted solely to show design, intention, knowl-
    edge and good or bad faith.

8.  FALSE PRETENSES—DEFENSE—OTHER OFFENSES.—In a prosecution
    for fraudulent pretense in procuring a check from an insurance
    company by falsely pretending that a person insured was dead,
    it was not competent for the defense to prove that, after
    accused severed his connection with the insurance company,
    another fraudulent claim was presented to the company, as such
    evidence had no tendency to disprove accused's guilt.

9.  CRIMINAL LAW—ADMISSION OF EVIDENCE—HARMFUL ERROR.—
    Upon a charge of procuring a check to be issued by an insurance
    company to a person named as sister of the person insured, by
    falsely pretending that the latter was dead, proof by a person of
    the same name as the alleged sister that she was not a sister of
    insured was incompetent, but not prejudicial, since it was purely
    negative.

Appeal from Jefferson Circuit Court; *T. G. Parham,*
Judge; affirmed.

*Rowell & Alexander* and *H. Jordan Monk,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J. Appellant was convicted on a charge of obtaining a check under false pretenses, and has appealed. The indictment is of unusual length, but, stripped of its legal phraseology, its allegations are as follows: That appellant, C. B. Norris, was on August 9, 1924, agent of the Metropolitan Life Insurance Company, a corporation under the laws of New York, and hereinafter referred to as the insurance company. That this insurance company issued a policy of insurance on the life of Sim Davis, agreeing thereby to pay a sum of money upon the death of Davis. That appellant, desiring to cheat the insurance company, fraudulently represented to it that Davis had died on August 6, 1924; that Dr. C. E. Spann attended and treated the said Davis in his last illness; that Mary Jones, a sister of Davis, was the beneficiary in said policy, and had paid all premiums due thereon and was entitled to receive the amount thereof, which was $135.60. That a statement in writing purporting to be that of the physician attending Davis in his last illness, dated August 9, 1924, and signed C. E. Spann, M. D., and a statement in writing dated August 9, 1924, and signed Mary Jones, claimant, were filed with the company as proof of the death of the said Davis, whereas, in truth and in fact, the said Sim Davis did not die on August 6, 1924, and was not dead; that Dr. C. E. Spann did not attend Davis; that Mary Jones had not paid the premiums on the policy, and had made no claim as his beneficiary. That these false representations were made to the insurance company by appellant, who knew them to be false, and by means of said false pretenses appellant Norris induced the insurance company to issue its bank check for the sum of $135.60, payable to Mary Jones, and of the value of $135.60, with the fraudulent intent of defrauding the insurance company out of that sum of money.

Appellant demurred to the indictment, and excepted to the action of the court in overruling the demurrer. In support of the assignment of error that the court erred in overruling the demurrer, it is insisted that the alleged false pretenses are based upon written instruments, and that these should have been set out in the indictment.

We do not think so. The offense charged is a statutory one, and it was not essential to set out the identical language of the writings referred to. It was sufficient to set out the substance and purpose of these writings, and this was done. There was nothing about these instruments which would require the court to construe them.

At § 43 of the chapter on False Pretenses in 11 R. C. L., page 859, it is said that "where a written instrument is only a step in the transaction or an incident to the offense, a particular description thereof is unnecessary." See also, *Prewitt* v. *State,* 76 Sou. 425; *State* v. *Caldwell,* 44 N. W. 711; *State* v. *Western Union Tel. Co.,* 160 Ark. 444.

It is next insisted that the court had no jurisdiction, for the reason that the check in question was issued in New York City, and was payable and was paid there. But the indictment alleges that the check, which was a thing of value, was obtained in Jefferson County, where the venue was laid, and the proof sustains that allegation. The check was mailed to and delivered in Jefferson County, and the testimony shows that the false representations which induced the mailing of the check to Jefferson County were made in and mailed from that county. The offense charged was that of obtaining a check, and the delivery thereof was in Jefferson County.

It is insisted that the demurrer should have been sustained because the indictment does not allege that the insurance company parted with its money by reason of its belief in and its reliance upon the false pretenses. The allegation of the indictment is that "by color and

means of which said false pretenses he, the said C. B. Norris, induced the said Metropolitan Life Insurance Company to issue its bank check for the sum of $135.60, payable to Mary Jones." We think this allegation sufficiently alleges that the false pretenses induced the company to issue and deliver its check.

It is insisted that the demurrer should have been sustained because the indictment shows on its face that the check was payable to a third person other than appellant and was not shown to have been indorsed by him, and that such a check is not a valuable security within the meaning of the statute under which the indictment was drawn.

The statute referred to is a very comprehensive one. It provides that "every person who, with intent to defraud or cheat another, shall designedly, by color of any false token or writing, or by any other false pretenses, * * * obtain from any person any money, personal property, right of action, or other valuable thing or effects whatever, upon conviction thereof shall be deemed guilty of larceny and punished accordingly." § 2449, C. & M. Digest.

The check was alleged to be of the value of its face, and the statute does not require that the "valuable thing" shall be obtained for one's own self. It is sufficient that it be obtained from the owner with the intent to cheat and defraud the owner, and it is immaterial therefore that, in fraudulently causing the check to be issued, appellant did not have himself named as the payee therein.

It is insisted that the testimony is insufficient to sustain the conviction. Answering this assignment of error, it may be said that it was shown that it was the custom of the manager of the insurance company in Pine Bluff, out of which office appellant operated as an agent, to deliver blanks upon which to make proof of death when the report was received that a policyholder had died. The proof required by the insurance company before

issuing a check in payment of a death claim consisted of a claimant's statement, a statement of the physician attending the insured in his last illness, and a statement on the part of the agent assisting in making up the proof. When these proofs were received by the insurance company, and were found in proper form, and were approved by the general manager at Pine Bluff, a check was mailed to the manager at Pine Bluff through whose office the claim was received, and the check was delivered to the claimant by the agent who had made up the proofs. The agent's statement on the death claim of Davis was identified by the insurance company's manager at Pine Bluff as being in the handwriting of appellant. The policy in question was known as an industrial policy, and it was not required that the beneficiary be named in the policy, but the company accepted the claimant recommended by the agent. The agent's statement, signed by appellant, named Mary Jones as the claimant to whom the check should be made payable. The statement signed by appellant recited that he had called on Dr. Spann and had verified the doctor's statement. Dr. Spann testified that he did not know Sim Davis and had never treated him professionally, and that he had not signed the physician's statement which bore his name.

Sim Davis, who was a colored man, testified that appellant delivered to him a policy in the insurance company, for which witness was to pay twenty cents per week, and that his payments were noted in a book given him for the purpose by the agent to whom the payments were made; that he got behind in his payments after making them for a year and a half, and that appellant came to him and took up his receipt book and the policy, and soon afterwards appellant came to the home of witness and asked him to state, if any inquiry was made about the policy, that he (witness) had never had a policy, and that he was not related in any way to any woman named Mary Jones.

Appellant testified that a woman claiming to be a sister of the insured, who called herself Mary Jones, pro-

duced the policy and receipt book and claimed the bene-
fits under the policy, and that he, believing the statement
of the woman to be true, followed the course pursued by
all agents of the insurance company and filled out the
agent's statement, and when he had done so he turned
the proof over to the manager at Pine Bluff for the
latter's investigation, and the same was subsequently
sent to New York by the manager, where a check was
issued to Mary Jones and mailed to the manager at Pine
Bluff for delivery to her.   Appellant denied ever receiv-
ing or seeing the check.   The manager of the insurance
company testified that when appellant left the service
of the company the records previously in appellant's pos-
session belonging to the company were surrendered, and
there was a difference of fourteen weeks in the record
kept by appellant and the receipt book belonging to
Davis.   The check issued in payment of the Davis policy
was dated August 12, 1924, and Davis' receipt book
showed premiums paid to July 21, 1924.

The cashier of a bank in Pine Bluff testified that the
check was deposited for collection in his bank by H.
Alfred Lewis, whose signature the witness identified,
and the check was indorsed with the names of Mary
Jones, Lewis Brothers, undertakers, and H. Alfred Lewis,
and that the check was paid, and the local bank received
credit therefor, and the proceeds of the check were placed
to the credit of the depositor. .

We think this testimony sufficient to connect appel-
lant with the fraud practiced upon the insurance com-
pany and to support the conviction on the charge stated
in the indictment.

It is insisted that the testimony does not show that
the company issued and parted with the possession of
the check in reliance upon anything which appellant did;
that the proof of death required the O. K. of the general
manager at Pine Bluff, and this O. K. had been placed
on the proof of death by the general manager, and that
the payment would not have been made without this O. K.

We do not think it any defense for appellant to say that the manager at Pine Bluff did not sufficiently investigate the claim before approving it. The fact was established that appellant did an essential thing to induce the company to issue the check by signing the agent's statement, and, if this statement was made with knowledge of its falsity and for the fraudulent purpose of inducing the company to issue the check in payment of a fictitious claim, the proof is sufficient to sustain the charge, even though appellant's statement as agent would not, of itself, have sufficed to induce the issuance of the check.

It is insisted that error was committed in admitting and in excluding certain testimony. It is first contended that the claimant's statement and the physician's statement were incompetent testimony, for the reason that they were not set out *in extenso* in the indictment. We have already said that it was not necessary to do this. These statements were only "steps in the transaction," mere evidence in the case, and were sufficiently referred to in the indictment to show their relevancy in charging the statutory offense of obtaining a "thing of value" by false pretenses.

Testimony was admitted over appellant's objection showing that several other false death claims had been presented for allowance and payment by the insurance company in the same manner as the Davis claim had been, in one of which the check had been made payable directly to H. Alfred Lewis, the man who indorsed and deposited the check in the local bank in payment of the Davis claim.

One of these claims was that for the death of Maggie McMorris, who testified that appellant delivered to her three policies, one for herself, one for her husband, and the third for her baby, and that a claim had been presented to the insurance company based upon her supposed death, and that appellant asked her, if any one inquired if she had been a policyholder in the Metropolitan Life Insurance Company, to answer "No," and that if she would do this appellant would make it all right with her

and would return to her all the premiums she had ever paid. Her receipt book showed that appellant had collected from her a premium in the week in which she was reported as having died.

Donie Whitfield, who was named as the claimant under the policy of Maggie McMorris, testified that she did not receive any part of the sum paid by the company upon the supposed death of the insured, and that she knew nothing about the claim. Testimony in regard to other claims was of a substantially similar nature.

All of this testimony was objected to upon the ground that it was irrelevant, in that it was not shown in any case that appellant ever received the check issued in payment of any of these fraudulent claims. Appellant's explanation was that he did no more than any other agent would have been required to do in assisting a claimant in presenting a claim.

Dealing with this testimony the court charged the jury as follows: "3. The court has admitted testimony of other offenses similar to the one charged in the indictment. You will not be permitted to convict the defendant upon such testimony. Evidence of other similar offenses, if you believe others have been proven, are admitted solely for the purpose of showing design, particular intention, knowledge, good or bad faith, and you should consider such evidence for this purpose and for this purpose alone."

A general objection was made to this instruction, and a specific objection was made that there was not such proximity of time between the similar offenses to constitute a scheme.

We think the instruction was a proper one. It was the theory of the State that appellant was not only a party to a scheme to defraud the insurance company by collecting false claims, but that he was the party principally concerned in doing so, and that, although no check was ever traced into appellant's hands, his part in the matter was not that of a dupe but was that of a principal,

and the testimony was therefore competent as tending to show a design and scheme to defraud. Nor do we think the transactions were so remote in point of time as to make the proof thereof incompetent for that reason. It was not essential that the fraudulent claims should have been presented simultaneously. It might have been thought more feasible and less likely to lead to detection to permit a short interval of time to elapse between the collection of one claim and the presentation of another.

After the above testimony as to the other fraudulent claims had been admitted, over appellant's objection, he offered testimony tending to show that, after he had severed his connection with the insurance company, another fraudulent claim was presented. The exclusion of this testimony is assigned as error. But we think this was not error. There may have been others besides appellant in the scheme to defraud; but that would be no defense, nor would the fact that a fraudulent claim had been presented to which appellant was not a party be a defense. The testimony as to the other fraudulent claims was admitted to overcome the contention of appellant that he had acted in good faith in making up the proof in the Davis claim, and the fact that another agent had at a later time presented another fraudulent claim would have no bearing on that question. Appellant had testified that the policy was presented to him by a woman calling herself Mary Jones, who represented that she was a sister of Davis, and appellant assumed that what the claimant said was true, and that he acted in good faith in making up her claim.

The State called as a witness a colored woman named Mary Jones, who lived at Altheimer, the place where Davis resided. This witness stated that she was not Davis' sister, and had not made any claim to the proceeds of the policy.

This testimony does not appear to have been competent. Appellant did not identify this woman as the woman who appeared before him. Her testimony was

therefore purely negative. Any colored woman named Mary Jones could have given the same testimony. But, while the testimony was incompetent, we do not think it was prejudicial. As we have said, the testimony was purely negative, and proved only that the witness was not the person who had made the claim. Appellant did not contend that there was or could have been a legitimate claimant, because the insured was not dead, and the witness Mary Jones proved only that she was not a party to the fraud.

Numerous objections were made to the instructions given, and these assignments of error are discussed in the brief. The theory of the State's case was stated in instruction numbered 1, which reads as follows: "If you believe from the evidence in this case beyond a reasonable doubt that the defendant, in Jefferson County, Arkansas, and within three years next before the filing of the indictment herein, designing and intending to cheat and defraud the Metropolitan Life Insurance Company, a corporation organized under the laws of the State of New York and doing business in the State of Arkansas, out of its goods, moneys and property, wilfully, unlawfully, fraudulently, falsely, knowingly and feloniously represented and pretended to the said Metropolitan Life Insurance Company that Sim Davis died on August 6, 1924; that Dr. C. E. Spann attended and treated the said Sim Davis in his last illness; that Mary Jones was a sister to Sim Davis and was the beneficiary under the policy and entitled to receive the sum of $135.60 by reason of the death of Sim Davis; that such representations so made were well known to the defendant Norris to be false and made with the unlawful, fraudulent and felonious intent to cheat and defraud the said Metropolitan Life Insurance Company; and that, in Jefferson County, by color and means of said false pretenses, the defendant obtained from the Metropolitan Life Insurance Company a check, the property of said company, in the sum of $135.60, of the value of more than ten dollars, you will convict the

defendant of the crime of false pretenses as charged in the indictment.''

This instruction is a correct declaration of the law as applied to the facts of this case. Answering the specific objections made to the instructions, it may be said that it does require the jury to find that the check was obtained, that its value was over ten dollars, and that the company was induced to issue and part with its possession by virtue of the false representations made concerning the death of the insured. The instruction did not require the jury to find that appellant actually obtained the money on the check, but it was not essential that this showing be made, as the charge was that he had obtained a check, which was itself a thing of value.

Other instructions announced familiar principles of law, and we think no useful purpose would be served in reviewing them.

Appellant's theory of the case was presented under instructions which would have required the jury to acquit if the finding had been made that his connection with the presentation of the claim was in good faith or in ignorance of the fraud which was contemplated.

Upon the whole case we find no prejudicial error, and the judgment will therefore be affirmed.