ALFORD *v.* STATE.

4760                                     266 S. W. 2d 804

Opinion delivered March 15, 1954.

[Opinion on rehearing delivered April 26, 1954.]

*Wiley A. Branton*, for appellant.

*Tom Gentry*, Attorney General, and *Thorp Thomas*, Assistant Attorney General, for appellee.

GEORGE ROSE SMITH, J.  The appellant was convicted of rape and was sentenced to death.  In our opinion there are two errors in the record which entitle the appellant to a new trial.

Although it is contended that the evidence is insufficient to support the verdict we find this contention to be without merit.  The prosecutrix, Mrs. Morman, testified that shortly after midnight on May 26, 1953, Alford entered the isolated railroad building in which she was working as a telegrapher.  When he revealed his purpose Mrs. Morman gave him her watch and money

in the hope of dissuading him, but Alford threatened her with a hunting knife, dragged her from the building, and raped her. Two residents in the vicinity heard Mrs. Morman's screams. A physician who examined her later in the night found bruises on many parts of her body and semen within the vaginal tract. The watch was later found in Alford's home. The defendant did not testify. We regard the testimony as ample to support the conviction.

We think, however, that the court was in error in failing to inform the jury of its option to impose either the death sentence or life imprisonment. Since this option lies entirely with the jury the court is under the affirmative duty of bringing the matter to the jury's attention, even though that action is not requested by the accused. *Webb* v. *State,* 154 Ark. 67, 242 S. W. 380; *Smith* v. *State,* 205 Ark. 1075, 172 S. W. 2d 249.

In the case at bar the penalty for rape was not mentioned in the court's instructions. Nor is it shown that, when the forms of verdict were given to the jury by the court, any oral explanation of the forms was made. Two of these forms provided for a finding of guilty on the charge of rape, one fixing the punishment at death and the other at life imprisonment. It is, of course, possible —it is perhaps quite probable—that the members of the jury so thoroughly discussed these forms that each juror understood his choice in the matter. But it is also possible that the alternative punishments were not discussed and that all the jurors did not examine the forms. In the latter case it might be impossible to discover the error, for jurors cannot impeach their verdict. In a matter of such grave importance we think that even the possibility of misunderstanding should be avoided. The court should explain the penalties to the jury as a whole, so that the record will disclose with certainty that the information was received by all the jurors.

Second, a Mrs. Austin was permitted to testify that on a night during the first half of May the defendant, by the use of a gun, forced her husband and her from their car, took her to a vacant house nearby, and attempted

to rape her, although he at last yielded to her entreaties and desisted without having accomplished his purpose. The court instructed the jury, in substance, that Alford could not be convicted upon Mrs. Austin's testimony, that evidence having been admitted only to show design, particular intention, knowledge, or good or bad faith. The appellant insists that the admission of this testimony was prejudicial error. The State contends that proof of a recent offense of a similar nature is competent.

This question of introducing proof of other offenses in criminal cases has been considered by us on more than a hundred occasions. In reviewing these opinions one notices that the results reached in the various cases have been harmonious to a high degree. There have occasionally been dicta that went beyond the requirements of the case under consideration, and with so many decisions to choose from it is, of course, possible to pluck sentences from their factual background and in that way to advance a plausible argument supporting either the reception or the exclusion of evidence concerning almost any prior offense. But when each statement of law is weighed in its own setting of fact the opinions may be readily reconciled with one another.

No one doubts the fundamental rule of exclusion, which forbids the prosecution from proving the commission of one crime by proof of the commission of another. The State is not permitted to adduce evidence of other offenses for the purpose of persuading the jury that the accused is a criminal and is therefore likely to be guilty of the charge under investigation. In short, proof of other crimes is never admitted when its only relevancy is to show that the prisoner is a man of bad character, addicted to crime.

The rule itself has been announced in some fifty decisions of this court and is so familiar that we need not discuss at length the reasons for its acceptance by every English and American court. Basically, the rule rests upon that spirit of fair play which, perhaps more than anything else, distinguishes Anglo-American law

from the jurisprudence of other nations. Our theory is simply that a finding of guilty should rest upon proof, beyond a reasonable doubt, that the accused committed the exact offense for which he is being tried. We do not permit the State to bolster its appeal to the jury by proof of prior *convictions,* with their conclusive presumption of verity, and still less is there reason to allow the jury to be prejudiced by mere accusations of earlier misconduct on the part of the defendant. If the accused has committed other crimes, each may be examined separately in a court of law, and punishment may be imposed for those established with the required certainty. In this way alone can we avoid the elements of unfair surprise and undue prejudice that necessarily attend trial by accusation in place of trial upon facts demonstrated beyond a reasonable doubt.

The rule is designed to protect the innocent, but it is often invoked as a basis for excluding *any* evidence that tends to show the commission of another offense. We have repeatedly rejected unfounded appeals to the protection of the basic rule of exclusion. If other conduct on the part of the accused is independently relevant to the main issue—relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal—then evidence of that conduct may be admissible, with a proper cautionary instruction by the court. "While the principle is usually spoken of as being an exception to the general rule, yet, as a matter of fact, it is not an exception; for it is not proof of other crimes as crimes, but merely evidence of other acts which are from their nature competent as showing knowledge, intent or design, although they may be crimes, which is admitted. In other words, the fact that evidence shows that the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial." *State* v. *DuLaney,* 87 Ark. 17, 112 S. W. 158.

Although, as stated in the above quotation, the instances of admissibility are not really exceptions to the exclusionary principle, most courts, including this one,

have often found it convenient to catalogue examples of competent testimony as exceptions to the general rule of inadmissibility. The only disadvantage in this approach is the possibility that incompetent evidence may be admitted under the guise of an exception or that competent proof may be ruled out for want of an exception that seems to fit the case. Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv. L. Rev. 988.

The State contends that evidence of recent similar offenses is admissible in criminal cases. While that broad statement has appeared in a few opinions, it must on each occasion be read in context. Taken as a whole, our decisions do not support the view that the sole test of competency is the recency of the other offense and the similarity of its nature. Indeed, if that test were applied woodenly in each case the result would be to deprive the accused of much of the protection that the rule is intended to afford.

Superficially similar to the case at bar are those decisions holding that in trials for incest or carnal abuse the State may show other acts of intercourse *between the same parties. Adams* v. *State,* 78 Ark. 16, 92 S. W. 1123; *Williams* v. *State,* 156 Ark. 205, 246 S. W. 503. But obviously such testimony is directly relevant to the question at issue. As stated in the *Williams* case, such prior acts of intercourse show ''the relation and intimacy of the parties, their disposition and antecedent conduct toward each other,'' and for that reason the evidence aids the jury in determining whether the offense was committed on the particular occasion charged in the indictment.

Again, where the charge involves unnatural sexual acts proof of prior similar offenses has been received: *Hummel* v. *State,* 210 Ark. 471, 196 S. W. 2d 594; *Roach* v. *State,* 222 Ark. 738, 262 S. W. 2d 647. Such evidence shows not that the accused is a criminal but that he has ''a depraved sexual instinct,'' to quote Judge Parker's phrase in *Lovely* v. *United States,* 4th Cir., 169 F. 2d 386.

Perhaps the most frequent resort to evidence of recent similar offenses occurs in the cases involving guilty

knowledge. In such cases good faith would be a defense to the charge; the vital issue is whether the defendant knew his conduct to be wrongful. For example, it is not a crime to pass a forged check in the belief that it is genuine, but the same conduct is criminal when done with knowledge that the instrument is bogus. Since it is highly improbable that an innocent man would repeatedly come into possession of forged checks, proof of recent similar offenses bears directly on the issue of guilty knowledge. In this category fall cases involving forgery, counterfeiting, false pretenses, knowledge that an establishment is a gambling house, and many other situations. *Cain* v. *State,* 149 Ark. 616, 233 S. W. 779; *Holden* v. *State,* 156 Ark. 521, 247 S. W. 768; *McCoy* v. *State,* 161 Ark. 568, 257 S. W. 386; *Norris* v. *State,* 170 Ark. 484, 280 S. W. 398; *Wilson* v. *State,* 184 Ark. 119, 41 S. W. 2d 764; *Sibeck* v. *State,* 186 Ark. 194, 53 S. W. 2d 5.

We need not take the time to review in detail the cases in which proof of other recent similar offenses is competent under other so-called exceptions to the general rule, as to show motive, *Shuffield* v. *State,* 120 Ark. 458, 179 S. W. 650, to rebut the plea of an alibi, *Nash* v. *State,* 120 Ark. 157, 179 S. W. 159, to prove the transaction as a whole, *Autrey* v. *State,* 113 Ark. 347, 168 S. W. 556, and so forth. The present case centers upon proof offered to show intent; so we turn to representative decisions on that point.

The issue of intent is *theoretically* present in every criminal case, and for that reason it is here that we are most apt to overlook the basic requirement of independent relevancy. Professor Stone, in the article cited above, has cogently demonstrated how easy it is to reason in this manner: Evidence to prove intent is admissible, and since the present case involves intent the proof should be received. 51 Harv. L. Rev. 988, 1007. What has happened is that the emphasis has shifted from evidence *relevant* to prove intent to evidence *offered for the purpose* of proving intent, by showing that the defendant is a bad man. If this transfer of emphasis is permitted the exclusionary rule has lost its meaning.

Many of the cases involving intent are similar to those involving guilty knowledge, in that guilt involves a specific mental attitude on the part of the defendant. For example, burglary is more than the mere breaking and entering of the premises; the defendant must have intended to commit a felony therein. We have therefore held that, when the accused contended that his wrongful entry was a mere trespass without felonious purpose, the State could sh w that the defendant had on other occasions broken i. ʌɔ the same store and committed larceny. *Camp* v. *State,* 144 Ark. 641 (mem.), 215 S. W. 170. The recent similar offense was directly pertinent to the issue of intent.

Similarly, upon a charge of unlawful possession of morphine the defendant contended that she had the drug lawfully for her own use, upon a doctor's prescription. We held that the State could show that she also had in her possession a quantity of cocaine, as bearing upon the question of whether the morphine was being kept for her own use or for sale or administration to others. *Starr* v. *State,* 165 Ark. 511, 265 S. W. 54. Again, where the issue was whether the accused had burned a car to collect insurance, proof that he had burned other insured vehicles was competent. *Casteel* v. *State,* 205 Ark. 82, 167 S. W. 2d 634. The same reasoning was followed in *Jenkins* v. *State,* 191 Ark. 625, 87 S. W. 2d 78.

A specific intent was involved in *Davis* v. *State,* 109 Ark. 341, 159 S. W. 1129. The statutory definition of a vagrant included a person going from place to place for the purpose of gaming. The State was rightly allowed to prove that the defendant had gambled in other counties. "We think such testimony was competent, *not for the purpose of proving the commission of the same offense in another county,* but to show the purpose of his wanderings, whether to pursue a lawful avocation. or to habitually engage in the pursuit of gambling." The clause we have italicized states plainly enough that a recent similar offense is not for that reason alone competent.

Quite evidently this category includes the many charges of assault with intent to commit a specified crime,

for here the State must prove not merely the assault but also that it was made with a certain intent. Hence, since the accused's purpose is at issue, proof of other similar offenses is independently relevant. *Stone* v. *State,* 162 Ark. 154, 258 S. W. 116; *Hearn* v. *State,* 206 Ark. 206, 174 S. W. 2d 452; *Gerlach* v. *State,* 217 Ark. 102, 229 S. W. 2d 37; Wigmore on Evidence (3rd Ed.), § 357.

On the other hand, the reception of proof of recent similar offenses is prejudicial error when the evidence has no true relation to the issue of intent. In two of our cases the charge was theft of horses, and the State was allowed to prove closely contemporaneous thefts of saddles or bridles. Both convictions were reversed and sent back for a new trial. *Dove* v. *State,* 37 Ark. 261; *Endaily* v. *State,* 39 Ark. 278. See also *Mays* v. *State,* 163 Ark. 232, 259 S. W. 398; *Yelvington* v. *State,* 169 Ark. 359, 275 S. W. 701. In *Morris* v. *State,* 165 Ark. 452, 264 S. W. 970, a conviction for assault with intent to kill was reversed because the State had been allowed to prove prior offenses by the accused, the State's theory being that these offenses tended to show the accused's motive in shooting at police officers. Judge FRANK SMITH put his finger on the point when he said: "There was no question about the motive of appellant in shooting at the officers."

Thus our cases very plainly support the common-sense conclusion that proof of other offenses is competent when it actually sheds light on the defendant's intent; otherwise it must be excluded. In the case at bar it seems to us idle to contend that there was any real question about Alford's intent, concerning which the jury needed further enlightenment. See Wigmore, § 357. If Alford overpowered his victim and ravished her, it is a quibble to contend that perhaps he intended something other than rape. The jury's problem was to determine whether the acts described by the prosecutrix took place; if so, their motivation is not open to doubt. The earlier attack upon Mrs. Austin could have no conceivable pertinence except to brand Alford as a criminal, which is just what the State is not allowed to do. *Williams* v.

*State*, 183 Ark. 870, 39 S. W. 2d 295. Nor could this deadly prejudice be removed by the instruction confining Mrs. Austin's testimony to the issue of intent. If her evidence had no permissible relevancy to that issue, and we think it had none, then the jury could obey the instruction only by disregarding the evidence altogether—a result that is more surely accomplished by excluding the testimony in the first place. It is not without regret that we send this cause back for a new trial. But the issue goes to the very heart of fairness and justice in criminal trials; we cannot conscientiously sustain a verdict that may have been influenced by such prejudicial testimony.

Reversed.

GRIFFIN SMITH, C. J., and MILLWEE, J., dissent.

McFADDIN, J., dissents in part.

## OPINION ON REHEARING

GEORGE ROSE SMITH, J., on rehearing. In connection with a petition for rehearing the State asks leave to amend the record by showing that the trial court in fact instructed the jury with respect to the alternative penalties for the crime of rape, this instruction having been omitted from the record by error. If this were the only reason for remanding the case for a new trial a ruling upon this motion would be necessary, as in *Morton* v. *State*, 208 Ark. 492, 187 S. W. 2d 335; but since a new trial is necessary in any event we find it unnecessary to pass upon the State's motion. See *Smith* v. *State*, 205 Ark. 1075, 172 S. W. 2d 248.

Rehearing denied.

ED. F. McFADDIN, Justice (dissenting).

### I.

*Failure to Instruct on Life Imprisonment*

I agree that the record in this case fails to show that the Jury was *instructed* regarding life imprisonment; and this case, on that point, is ruled by the case of *Webb* v.

*State*, 154 Ark. 67, 242 S. W. 380, and *Smith* v. *State*, 205 Ark. 1075, 172 S. W. 2d 249. Therefore, I am convinced we should do here as we did in the cited cases; and this should be our direction, as quoted from *Webb* v. *State, supra:*

"The sentence of death . . . will be set aside, and the sentence reduced to imprisonment for life in the State Penitentiary at hard labor, unless the Attorney General elects, within two weeks, to have the judgment reversed and the cause remanded for a new trial."

## II.

### Proof of Other Acts of a Similar Nature

But I most earnestly dissent from all that part of the majority opinion which holds that the Trial Court committed error in admitting evidence of Alford's attempt to rape Mrs. Austin. Such evidence was entirely competent under the Instruction given by the Trial Court, as hereinafter quoted.

The majority opinion correctly states that the prosecution in any criminal case cannot prove the commission of the crime in question by the proof of the commission of other offenses of a similar nature; but such was not attempted to be done in the case at bar. That the evidence of the attack on Mrs. Austin was not admitted for such purpose is clearly shown by the Instruction which the Trial Court gave to the Jury, and which reads:

"The Court has admitted testimony of another offense similar to the one charged in the information. You will not be permitted to convict the defendant upon such testimony. Evidence of another similar offense, if you believe another has been proven, is admitted solely for the purpose of showing design, particular intention, knowledge, good or bad faith, and you should consider such evidence for this purpose and for this purpose alone. The defendant is not on trial for any offense except the alleged offense against Mrs. Morman and the defendant

cannot be convicted on Mrs. Austin's testimony of another possible offense.''

The majority opinion says: ''If other conduct on the part of the accused is independently relevant to the main issue—relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal—then evidence of that conduct may be admissible, with a proper cautionary instruction by the Court.'' The Instruction copied above shows that a ''proper cautionary Instruction'' was given in the case at bar.

The majority opinion admits that in *some cases*, proof of other acts of a similar nature is admissible as bearing on the ''knowledge, intent or design''; and the majority opinion cites at least eight situations in which other acts of a similar nature have been held to be admissible by our cases. I take these eight situations and cases from quotations in the majority opinion:

1. ''. . . in trials for incest or carnal abuse the State may show other acts of intercourse *between the same parties. Adams* v. *State,* 78 Ark. 16, 92 S. W. 1123; *Williams* v. *State,* 156 Ark. 205, 246 S. W. 503.''

2. ''Again, where the charge involves unnatural sexual acts proof of prior similar offenses has been received. *Hummel* v. *State,* 210 Ark. 471, 196 S. W. 2d 594; *Roach* v. *State,* 222 Ark. 738, 262 S. W. 2d 647.''

3. ''. . . in the cases involving guilty knowledge . . . cases involving forgery, counterfeiting, false pretenses, knowledge that an establishment is a gambling house, and many other situations. *Cain* v. *State,* 149 Ark. 616, 233 S. W. 779; *Holden* v. *State,* 156 Ark. 521, 247 S. W. 768; *McCoy* v. *State,* 161 Ark. 568, 257 S. W. 386; *Norris* v. *State,* 170 Ark. 484, 280 S. W. 398; *Wilson* v. *State,* 184 Ark. 119, 41 S. W. 2d 764; *Sibeck* v. *State,* 186 Ark. 194, 53 S. W. 2d 5.''

4. In those cases ''. . . in that guilt involves a specific mental attitude on the part of the defendant . . . *Camp* v. *State,* 144 Ark. 641, 215 S. W. 170. The

recent similar offense was directly pertinent to the issue of intent."

5. ". . . possession of a quantity of cocaine, as bearing upon the question of whether the morphine was being kept for her own use or for sale or administration to others. *Starr* v. *State*, 165 Ark. 511, 265 S. W. 54."

6. "Again, where the issue was whether the accused had burned a car to collect insurance, proof that he had burned other insured vehicles was competent. *Casteel* v. *State*, 205 Ark. 82, 167 S. W. 2d 634."

7. "The State was rightly allowed to prove that the defendant had gambled in other counties . . . to show the purpose of his wanderings, . . ." *Davis* v. *State*, 109 Ark. 341, 159 S. W. 1129.

8. ". . . the many charges of assault with intent to commit a specified crime . . . since the accused's purpose is at issue, proof of other similar offenses is independently relevant. *Stone* v. *State*, 162 Ark. 154, 258 S. W. 116; *Hearn* v. *State*, 206 Ark. 206, 174 S. W. 2d 452; *Gerlach* v. *State*, 217 Ark. 102, 229 S. W. 2d 37."

Now, in the above eight numbered categories, I have quoted directly from the majority opinion to show cases in which the majority opinion admits that evidence of other similar offenses was admissible in each instance. I submit that when the majority admits—as it has—that in the eight categories above, the evidence of other similar acts was admissible, then the majority cannot be heard to say—with any degree of consistency—that the evidence of a similar attempted rape was not admissible in the case at bar.

In category 2 above, the majority admits that "where the charge involves unnatural sexual acts, proof of prior similar offenses has been received." I submit that rape falls in the same category as that quoted, because rape is *forced* sexual intercourse. In *Needham* v. *State*, 215 Ark. 935, 224 S. W. 2d 785, in discussing rape and unnatural sexual intercourse, this Court (speaking through the writer of the majority opinion in the present case), said:

"The argument now is that the accused may be a sexual pervert (he was so characterized by one witness for the defense) who did not either intend or accomplish an act of intercourse. The patent answer to this suggestion is that the proof still does not show the possibility of an assault with intent to rape; for one can intend to commit rape only if he intends to have sexual intercourse with his victim."

Thus, in the Needham case, the words were "for one can *intend* to commit rape only if he *intends* to have sexual intercourse with his victim." (Italics our own.) The quoted language from the Needham case constitutes judicial recognition that intent has been recognized as being involved in the offense of rape. So, if "other acts of a similar nature" are admissible where *intent* is involved, then I fail to see why the attack on Mrs. Austin was not admissible in the case at bar: it was certainly another act of a similar nature to show the *intent* with which the appellant attacked Mrs. Morman, for which act he was being tried.

Further, I point out that when the defendant was being tried for rape in the case at bar, he was also being tried for assault with intent to rape. At *defendant's request*, the Court gave Instruction No. 4, which reads:

"The crime of assault with intent to rape is embraced in the information charging the crime of rape; whoever shall feloniously, wilfully, and with malice aforethought assault any person with intent to commit a rape shall on conviction thereof be imprisoned in the penitentiary not less than three nor more than twenty-one years."

Now the majority opinion says in its category 8, (*supra*), that in cases of *assault with intent* to commit a specific crime ". . . proof of similar offenses is independently relevant." Appellant asked the Court to instruct the Jury on the crime of assault *with intent* to rape. How can the majority say, in the face of appellant's requested Instruction which was given, that evidence of other similar offenses was not admissible on the issue of *intent?* I submit that the majority opinion shows that

the testimony about the attack on Mrs. Austin was correctly admitted by the Trial Court.

Because I entertain the views herein expressed, I respectfully dissent.