## STATE v. DuLANEY.

### Opinion delivered June 29, 1908.

1. BRIBERY—INDICTMENT OF ACCESSORY—EVIDENCE.—Evidence that would be competent in a prosecution for bribery would also be competent in a prosecution for being accessory to bribery, there being no distinction in principle between the two offenses. (Page 21.)

2. SAME—EVIDENCE OF OTHER CRIMES.—Where, in a prosecution of a member of the Legislature for being accessory to a bribery alleged to have been committed by a certain corporation, the evidence as to defendant's guilty intent was conflicting, it was competent for the State, in corroboration of other testimony which tended to prove defendant's guilt, to prove that he had previously entered into a general agreement with a lobbyist who represented this and various other corporations and used money improperly to influence the legislation in their favor, whereby defendant, for a money consideration, was to protect such corporate interests in the Legislature as were represented by such lobbyist, although it was not shown that defendant knew that this particular corporation was represented by the lobbyist. (Page 22.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; trial court held to have erred.

#### STATEMENT BY THE COURT.

A. D. DuLaney was the representative of Little River County in the General Assembly of 1905. He was indicted by the grand jury of Pulaski County on a charge of being an accessory to the crime of bribery, committed by one A. J. Kizer giving the said DuLaney the sum of $200 to corruptly influence his vote on a bill pending in the House of Representatives, entitled, "An act requiring long distance telephone companies to permit physical connection with local telephone companies and

for other purposes." On the trial the defendant was acquitted.

The issues in the case were these: The State introduced evidence tending to prove that Kizer was interested in the defeat of the bill named in the indictment, and that King and Ritchie were interested in its passage; that DuLaney undertook to manage the bill in behalf of King and Ritchie on the floor of the House, and that he voted for a suspension of the rules in order that the bill might be considered; that the rules were suspended, and the bill read a second time and referred to the Railroad Committee, of which DuLaney was chairman; that, after supporting the bill for some time, he, in a veiled way, made a demand for money, which was refused, and that soon thereafter he announced to King that he could no longer continue to handle the bill on the floor of the House, as he was deluged with communications from his constituency opposing the bill, and that he thereafter opposed the bill and voted against it; that, after the bill was defeated, he received from Kizer a draft for $200, transmitted to him through Powell, a friend of Kizer's, manager of a telephone system and likewise interested with Kizer in the defeat of the bill in question; that the letter transmitting said draft indicated upon its face that the amount was in payment of some real estate, and it was shown that the property was four lots in the town of Wilton; that said lots were worth $12.50 to $15 each, or a total of $50 or $60; that they were owned by a brother of defendant, and that no deed had appeared of record for the same conveying them to Kizer, and that Kizer made admissions of having paid said sum to the defendant on account of said bill.

On the other hand, the defendant introduced evidence tending to prove that he was at all times opposed to the bill, and merely voted for a suspension of the rules as a courtesy to the friends of the bill in order that it might be considered on its merits; that his opposition was known at the time he voted for this suspension of the rules; that he had made no proposition, veiled or otherwise, to King or Ritchie or any one else for money to support the bill, and that he did not receive any money for his opposition to it; that the $200 received from Kizer was a business transaction not related to any of his official duties, and that the lots sold to Kizer were worth the price that

he paid, or more; that the deed to them had been executed by his brother and delivered to Kizer, and that he was representing his brother in this sale to Kizer; and also introduced evidence tending to show that two of the principal witnesses for the State were not men of good reputation for truth and morality (on the other hand the State in rebuttal offered testimony that they were men of good reputation in these respects) ; he also introduced testimony contradicting different witnesses for the State upon many material matters.

The State proved by T. L. Cox that he represented various corporations and corporate interests in connection with the General Assembly of 1905; that he kept his clients advised of legislation pending and bills introduced and bills passed, and that he used money on bills for the purpose of influencing legislation thereupon, and represented corporate interests in that capacity; that he was acquainted with DuLaney, who was chairman of the Railroad Committee in the House. The State offered to prove by said witness that he had had DuLaney appointed chairman of the Railroad Committee; "that DuLaney then came to him, and they had a meeting in his room in which DuLaney wanted to see whether arrangements could be made about the amount of money he could get on various matters that would come before the committee in which Cox was interested for the various corporations. That they finally entered into this agreement: That the amount would not be fixed except on the railroad. In that they agreed upon $1,000, and that was paid to him. That thereupon an agreement, his general agreement. was that where such other matters and bills that came before that committee in which Cox was interested, or any corporation he represented was interested, Dulaney should take money on them as a bribe for doing his will—what was wanted done by Cox. That he did take it in pursuance of that. That he took money on some other measures in pursuance of this general agreement. That Cox was interested in this telephone bill. That money was put up to defeat the bill."

The court stated that he would not admit this testimony unless the State could show there was an agreement concerning the particular bill. The prosecuting attorney then stated more fully his offer as follows: "We cannot prove by Cox that on

this particular bill he gave money to DuLaney, but Cox explains that by the fact that he was out of the city at the time this bill came up, and that he was not here at the time it was pending in the House. We cannot show that this particular bill was ever mentioned in any conversation had between Cox and the defendant, other than it was understood that the defendant should look after all bills in which Cox was interested. This agreement and understanding was had at the beginning of the session of 1905 and before this telephone bill was introduced in the Senate.

(By the court) : "Can you show that the defendant knew that Cox was interested in the defeat of this telephone bill— Senate Bill No. 215 ?"

(By Lewis Rhoton, Prosecuting Attorney) : "No, sir, we cannot show that. We can only show the general agreement and understanding as I have before stated."

The court sustained the objection to this testimony, and the State excepted, and it is the ruling of the court thereupon that the State desires a review by this court.

*William F. Kirby, Atty. Gen.* and *Dan'l Taylor,* for appellant.

While one crime cannot be established by proof of the commission of another, yet when other crimes are so connected with the one charged that they tend to explain it or throw light upon the motive, intent, design, or good faith of defendant in the commission of the crime charged, then such evidence is admissible.    156 Fed. 897; 133 *Id.* 495; 127 *Id.* 536; 133 *Id.* 849; Wharton's Crim. Ev. sec. 38 *et seq.; 72* Ark. 586; 75 *Id.* 427; 49 *Id.* 449; 28 Tex. App. 377; 138 Mass. 493; 88 Ia. 27; 66 Cal. 271; 78 Ala. 12.    Under the allegations of the indictment and the circumstances of the case, it was competent for the State to prove other acts of bribery.    16 Neb. 667.    They are admissible to show intent or motive.    157 Ind. 57; 79 S. W. 1123; 136 Mo. 293; 96 N. W. 330.

*W. L. Terry* and *Murphy, Coleman & Lewis,* for appellee.

On his direct examination appellee denied that any one ever offered him any money in connection with the bill. It was to contradict his answers to questions asked on cross exam-

ination about collateral matters and supposed independent crimes that Cox's testimony was offered; it was therefore properly rejected. 1 Greenleaf on Ev. (16 Ed.) p. 578; 72 Ark. 410; 76 *Id.* 302; 5? *Id.* 303; 53 *Id.* 387; 60 *Id.* 450; 38 S. W. 331; 61 Atl. 65; 53 N. Y. 164; 13 Am. Rep. 492; 57 S. W. 80; 33 *Id.* 336; 41 Vt. 80; Wig. on Ev. § 981. An agreement on the part of one to give and of another to receive does not constitute a conspiracy or unlawful combination. 156 Fed. 897. Before one crime is admissible in evidence on a trial of a charge for another, the two must have existed in the mind of the defendant; they must have had some connection in his mind. 72 Pa. St. 63. Where the object is to prove the commission of one crime by evidence of the commission of others, more than a mere similarity must appear as a prerequisite to admissibility. 75 Ark. 427; 2 *Id.* 234; 39 *Id.* 279; 37 *Id.* 265; 72 *Id.* 586; 168 N. Y. 264; 177 *Id.* 434; 126 Cal. 351; 52 Ark. 309.

HILL, C. J., (after stating the facts). Where an appeal on behalf of the State is desired, the statute provides that the prosecuting attorney shall pray the appeal, and the clerk shall make out a transcript of the record and transmit it to the Attorney General. If the Attorney General, on inspecting the record, is satisfied that error has been committed to the prejudice of the State, and upon which it is important to the correct and uniform administration of the criminal law that the Supreme Court should decide, he may lodge the transcript in the clerk's office of the Supreme Court and take the appeal. But a judgment in favor of a defendant which operates as a bar to further prosecution shall not be reversed by the Supreme Court, even though error was committed in the trial to the prejudice of the State. Sections 2602, 2603, 2604, Kirby's Digest. This is a method afforded the law officers of the State to take the opinion of the Supreme Court upon questions which they consider important to the correct and uniform administration of the criminal law.

The court is met with an objection to a consideration of the other questions involved by the insistence that the indictment cannot be sustained, as it charges DuLaney with being an accessory to a bribery of himself, the bribery committed by Kizer, instead of accusing him of being guilty of the crime of bribery. The reason for the form of the indictment is neither apparent

nor important on this appeal. The gist of the charge is that Du-Laney was an accessory to Kizer bribing him; and the testimony which was offered by the State and rejected by the court, which ruling the State has asked the court to review, would be competent under this indictment if competent under an indictment charging bribery, and the sufficiency of the indictment is not a question now. Such evidence has been admitted by other courts in a case of soliciting a bribe (*Higgins* v. *State,* 157 Ind. 57) and in attempting to corrupt a juror (*State* v. *Williams,* 136 Mo. 293), and no distinction in principle can be discerned between such cases and one where the charge is being an accessory to bribery of the defendant himself.

The testimony of Cox, which the State offered and which the court refused to admit, would have proved, if the jury had believed it, that DuLaney held the position of chairman of the Railroad Committee through Cox's influence; and that he had an agreement with DuLaney to pay him a thousand dollars, and did pay him that sum, to do Cox's will in regard to railroad matters, and that the general agreement also included other matters, which were any bills that came before that committee in which Cox was interested, or in which corporations that he represented were interested; that DuLaney was to take money on them as a bribe for doing his will; that he did take it in regard to railroad legislation and on some other measures in pursuance of the general agreement to do Cox's will, and that money was put up to defeat this bill, and Cox was interested in it, but Cox was absent when the bill came up, which was the reason that he did not personally give the money to DuLaney upon it; but the State could not connect Cox and the defendant regarding this particular bill, other than through the general scheme above stated, which scheme was entered into at the beginning of the session and before the telephone bill was introduced. Was this testimony of Cox competent?

The principle of evidence that offenses or acts similar to the one charged may be competent for the purpose of showing knowledge, intent or design is as thoroughly established as the general proposition that other crimes or offenses cannot be shown in evidence against a defendant charged with a particular crime. While the principle is usually spoken of as being an ex-

ception to the general rule, yet, as a matter of fact, it is not an exception; for it is not proof of other crimes as crimes, but merely evidence of other acts which are from their nature competent as showing knowledge, intent or design, although they may be crimes, which is admitted. In other words, the fact that evidence shows the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial. *Higgins* v. *State,* 157 Ind. 57; 1 Wigmore on Evidence, § 300. This court has applied the principle under discussion in *Howard* v. *State,* 72 Ark. 586; *Johnson* v. *State,* 75 Ark. 427; *Woodward* v. *State,* 84 Ark. 119.

The Court of Appeals in New York stated the principle as follows: "Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial." And in discussing the fourth ground above enumerated, it says: "Fourth: As to a common plan or scheme. It sometimes happens that two or more crimes are committed by the same person in pursuance of a single design or under circumstances which render it impossible to prove one without proving all. To bring a case within this exception to the general rule which excludes proof of extraneous crimes, there must be evidence of system between the offense on trial and the one sought to be introduced. They must be connected as parts of a general and composite plan or scheme, or they must be so related to each other as to show a common motive or intent running through both." *People* v. *Molineux,* 168 N. Y. 264.

Mr. Wigmore, in speaking of the admissiblity of such evidence in charges of bribery, says: "On a charge of bribery, any of the three general principles—knowledge, intent and design— may come into play. To show knowledge of the nature of the transaction, a former transaction of the sort may serve, as indicating an understanding of the particular transaction. To show intent, another transaction of the sort may serve to negative good faith. To show a general design, a former attempt

towards the same general end may be significant." 1 Wigmore on Evidence, § 343. In the notes to this section may be found a review of the authorities; and it is found that they are not uniform in sustaining the principles announced by Mr. Wigmore, and he indulges in some caustic criticism of the courts that take views opposed to his statement·of the correct principle.

The best thought on the subject seems to be with Mr. Wigmore, and is found applied in the following bribery cases: *Guthrie* v. *State,* 16 Neb. 667; *Higgins* v. *State,* 157 Ind. 57; *State* v. *Schnettler,* 181 Mo. 173. The last case is especially pertinent here. Schnettler was on trial charged with accepting a bribe, when a member of the House of Delegates in the city of St. Louis, in regard to a certain bill authorizing a corporation to construct, maintain and operate a street railway business on certain streets and other public places in said city. Evidence was adduced to show that a "combine," as it was called, was formed by members of the House of Delegates to corruptly control legislation. Over the objection of the defendant, the State was permitted to prove that the defendant had received $2500 as a bribe to induce him to cast his official vote in favor of a bill previously pending before the House of Delegates affecting the lighting of the public streets of St. Louis—a separate and distinct measure from the one concerning which he was charged with bribery. The court said: "The authorities all hold that as a general rule the State cannot prove against a defendant the commission of offenses other than the one charged and for which he is upon trial; but an exception exists with respect to this rule where the collateral crime is brought into a common system, a system of mutually dependent crimes, or is so linked to the crime under trial as to show that it is part of the same scheme or understanding, or in some way have some logical connection with the crime charged." Applying the above announced principle to the facts of the case, the court then said: "It appears from the evidence that about the time of the organization of the House of Delegates a combination was entered into between various members of that body, including the defendant, for the purpose of controlling legislation by the members of the combine demanding and receiving money consideration for the passage or defeat of certain bills which might be brought be-

fore them, to be paid by the individuals, corporations or parties interested therein, and that defendant did in fact receive the sum of two thousand five hundred dollars on account of his vote on the lighting deal. This arrangement was not only with respect to the lighting deal in which he received two thousand five hundred dollars for his vote, but it applied to all other matters of a similar character which might come before the House of Delegates, and was, therefore, part of the same scheme, or arrangement, and logically connected with the charge in the information, hence formed an exception to the general rule, and the facts in respect thereto were admissible in evidence for the purpose of showing that the crime charged was within the scope of the purpose for which the conspirators were banded together, and to explain and corroborate other testimony which bore directly upon the commission of the crime charged."

The bill mentioned in this indictment was before the committee of which defendant was chairman. The evidence offered tended to prove that all bills affecting corporations which were referred to the committee of which he was chairman should be looked after by him in the interest of his corrupt general agreement with Cox, where Cox was interested, and that Cox was interested in this bill. While it is not offered to be shown that DuLaney knew that Cox was interested in this particular bill, yet the bill was of that character that was covered by his general agreement with Cox, and it was a part of the same scheme and arrangement, and logically connected with the matters covered in his general agreement. A perusal of the evidence in the case shows that, had the State's witnesses been believed, the jury would have been authorized to convict; and, on the other hand, had the defendant's witnesses been believed, the defendant was fully exonerated of the charge against him, and the jury warranted in believing the charge against him an effort to ruin him by his personal and political enemies. In view of such state of the evidence, it was manifestly important that proper corroborating evidence of either side be not excluded. The evidence offered was admissible for the purpose of showing that the crime charged was within the scope of the purpose for which it was alleged the defendant and Cox had conspired, and to explain and corroborate other testimony which bore directly upon

the commission of the crime charged, which testimony might be meaningless unless pointedly explained by this general corrupt agreement to which it was alleged this defendant was a party.

It is therefore the opinion of the court that the circuit court erred in not admitting the offered evidence.