MARY LOUISE DICKERSON *v.* STATE OF ARKANSAS

5620                         471 S.W. 2d 755

Opinion delivered October 25, 1971

*Percy A. Wright,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Mary Louise Dickerson, formerly Mary Louise Greer, was charged by felony information filed in the Mississippi County Circuit Court with the crimes of forging and uttering a check in the amount

of $34.34 to a Kroger store in Blytheville, Arkansas. She was found guilty of forgery at a jury trial and was sentenced to three years in the penitentiary. She has appealed to this court and the appeal is submitted on a single brief by the state's attorney general pursuant to Rule 11(g) of the Rules of this court.

The facts as gathered from the evidence offered by the state show that a Kroger store in Blytheville received a check dated January 1, 1969, in payment for groceries purchased at the store in the amount of $34.34. The check was drawn on the Merchants & Planters Bank of Manila and bore the signature "Rose Ann Swaney" as the maker. The address and telephone number of the maker were written on the check as "Manlia—561-3491." The check was presented at the bank for payment in the regular course of business and was dishonored by the bank because Rose Ann Swaney had no account and had never had an account with the bank. A warrant of arrest was then sworn out for Rose Ann Swaney and was placed in the hands of the Blytheville Police Department for service.

Sergeant Mike Richardson, detective with the Blytheville Police Department, testified that he was acquainted with the appellant, Mary Louise Dickerson, and that he also knew her as Mary Louise Greer before she was married to Dickerson. He testified that upon receipt of the check he attempted, without success, to locate "Rose Ann Swaney" and proceeding on the theory that the check to Kroger might be a forgery, he attempted to check out the Manila telephone number indicated on the check. He testified that in following this procedure he examined his police record files pertaining to other recent check complaints and found a check dated December 28, 1968, drawn on the Merchants & Planters Bank of Manila and made payable to Safeway. He testified that this check was signed "Louise Greer" with address and telephone number written in as "Manlia—561-3481." He testified that in checking out the telephone number on the check signed by Louise Greer he found that it was the correct telephone number of Louise Greer's mother. He testified that he interviewed Louise Greer in his office on April 5, 1969; that she did not deny that she signed the check to Safeway, but that she

denied any knowledge of the Kroger check. He testified that in compliance with his request the appellant, then Louise Greer, produced several samples of her handwriting in which she wrote "Rose Ann Swaney."

Sergeant Richardson testified that he again interrogated the appellant on December 27, 1969, and that she then told him she did not remember making or signing the check to Kroger but that she could have done so.

"She stated that during this time, reference January 1, 1969, she was intoxicated and that she was, in her words, 'running around,' and that she could have wrote the check."

He testified that the appellant stated to him that the telephone number "561-3491" as written on the check to Kroger, was identical to her mother's then telephone number with the exception of the digit "9" which should have been "8." Sergeant Richardson testified that the address of "Rose Ann Swaney" as written on the check to Kroger, was spelled the same as the address of "Louise Greer" written on the check to Safeway, and that in both instances the addresses were written "Manlia."

Howard Chandler, Questioned Document Examiner with the Arkansas State Police, testified that in his opinion the same person who signed "Rose Ann Swaney" on the Kroger check also signed "Rose Ann Swaney" on the exhibits taken as samples of the appellant's handwriting.

We now come to evidence submitted on behalf of the state which calls for a reversal of the judgment in this case. In the presentation of the state's case in chief, Donna DiCicco, a deputy circuit clerk of the Chickasawba District of Mississippi County, was called as a witness by the state and was questioned concerning the judgment record in criminal record docket No. 9143. The record pertaining to this evidence appears as follows:

"Q. Donna, I believe it has been established in the course of this trial that Mary Louise Greer

and Mary Louise Dickerson are one and the same person. Who is the defendant in the case Number 9143 there?

A. I believe it is Mary Louise Greer.

Q. All right. And the offense with which the defendant was charged in that case?

A. It was forgery and uttering.

Q. And what was the judgment or verdict?

A. (Examining document). Entered a plea of guilty.

Q. All right. And what was the judgment?

A. 'Sentenced to a term of five years in the State Penitentiary on the charge of Forgery, and a term of five years in the State Penitentiary on the charge of uttering. Said sentences to run concurrently and three years of each sentence is hereby suspended.'

Q. And what was the date of that judgment on Mary Louise Greer on the offense of forgery and uttering?

A. May the 20th, 1964.

MR. PEARSON: If the Court please, offer these into evidence.

THE COURT: They may be received without objection.

MR. WRIGHT: If the Court please, I wish to object to the introduction of this evidence. It tends to do nothing more than to place—then to challenge the testimony of the witness, and the witness has not been put on the stand as yet. It doesn't prove or disprove any of the issues in the case that we are trying.

MR. Pearson: If the Court please, this evidence is being offered not for the purpose, of course, of going to her guilt or innocence of the offense for which she is now charged. *It is offered for the purpose of showing the criminal intent and guilty knowledge of the defendant to aid in the determination of the intent at the time of the passing of the check, forgery of the check for which she is charged; motive, design, habits and practices.*

THE COURT: That part of the witness' testimony going to the judgment of the Court and the sentence of the Court, the objection to that part will be sustained and the jury is instructto disregard it. That part where she admitted her guilt of the check upon which she was charged, the objection is overruled. That part may be admitted.

MR. WRIGHT: And the defendant maintains that it is merely for the purpose of influencing this jury in this particular case, and on that grounds, the ruling of the Court is excepted to.

THE COURT: The tender of the exhibits, being the docket sheet in Case Number 9143, and the Judgment in that case, being tendered for exhibits in this case, the objection to those will be sustained.

MR. PEARSON: Allow the State to withdraw the offer then of the judgment, your Honor, but the testimony of the witness concerning same, of course, will be admitted, I take it.

\* \* \*

THE COURT: Yes, sir." (Emphasis supplied).

The appellant then testified in her own defense and while steadfastly denying that she wrote the check to Kroger or knew anything at all about it, she ad-

mitted on direct examination that she pleaded guilty to forgery and uttering in 1964 and then on cross-examination she admitted numerous overdrafts and other forgeries.

There are two reasons why the evidence of the 1964 convictions was inadmissible in this case. It was too remote in time to establish a mode of conduct ("habits and practices") and it had no relevancy to the crime charged under the other purposes for which it was offered.

In *Wilson* v. *State,* 184 Ark. 119, 41 S. W. 2d 764, a list of similar checks to the one for which the defendant was charged was admitted in evidence at the trial. One of the checks was dated 1927, one 1928, one 1929, and the rest in 1930 (apparently the year of the offense charged). This court in approving the admission of this evidence stated:

> "As a general rule, it must appear that the evidence of other offenses relate to offenses that occurred shortly before or after the commission of the offense for which the accused is being tried...
>
> It would be difficult to lay down any rule fixing the time of the commission of the collateral offenses before or after the commission of the crime for which the party is being tried. All the checks that were introduced in this case were competent, because they tended to show a system of operating from the date of the first check continuously to the date of the check for the forgery for which he was being tried.

*  *  *

> Moreover, this class of evidence must be limited within such a period that it may naturally be seen to throw light as to the intent with which the act under investigation was committed; and the question of time during which other acts may be proved seems to be largely within the trial court's discretion."

The defendant in the *Wilson* case contended that he obtained the check he was charged with forging from the true maker in payment for dental work. But in the case at bar, the appellant had steadfastly denied to the officers any knowledge at all of the check to Kroger, except she did admit to Sergeant Richardson that she possibly could have written the check since she was drinking and "running around" about the time the check was dated. The appellant had not testified, or taken the witness stand in her own defense, at the time her pleas of guilty to forgery and uttering, more than five years previously, were placed in evidence by the state.

We cannot overlook the fact that at the time the prior conviction was offered in evidence, there had been no proof other than circumstantial, that the appellant had even written the check to Kroger, or knew anything about it at all. Consequently, her prior conviction, even if at a much later date, would have had no probative value in showing criminal intent, guilty knowledge, motive or design.

Now if the appellant had admitted writing the check but with no intent to defraud; or if her intent, guilty knowledge, motive or design had become issues in the case at all at the time the evidence of her previous convictions on pleas of guilty was offered in evidence, we might have a different question before us, but no such issues are presented under the facts in this case.

In *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804, many situations are discussed in detail wherein evidence of previous criminal acts may be accepted as competent evidence in the trial of criminal cases. So-called exceptions to the general exclusionary rule are discussed in *Moore* v. *State,* 227 Ark. 544, 299 S. W. 2d 838, and in *Umbaugh* v. *State,* 250 Ark. 50, 463 S. W. 2d 634, so we shall not reiterate them again in detail here. Suffice it to say that we consider the evidence of the prior convictions, in the case at bar, to fall within the exclusionary rule commented upon in *Alford, supra,* where we said:

"No one doubts the fundamental rule of exclusion, which forbids the prosecution from proving the commission of one crime by proof of the commission of another. The State is not permitted to adduce evidence of other offenses for the purpose of persuading the jury that the accused is a criminal and is therefore likely to be guilty of the charge under investigation. In short, proof of other crimes is never admitted when its only relevancy is to show that the prisoner is a man of bad character, addicted to crime."

The state's attorney general argues that by testifying in her own defense the appellant waived any error in the admission of the evidence of prior convictions. We do not agree. The inadmissible evidence of the prior convictions may have been the only reason the appellant felt compelled to take the witness stand in her own defense. Once on the witness stand, however, she was subject to cross-examination the same as any other witness. The burden was on the state to prove by competent evidence that the appellant was guilty of forging and uttering the check to the Kroger store, and the appellant was not required to testify at all in her own defense. She had a right to rely on the statutory presumption of her innocence until the state discharged its burden of proving her guilty beyond a reasonable doubt by competent evidence. She also had a right to remain silent in the face of the damaging circumstantial evidence against her, in the hope that the jury would not be convinced of her guilt beyond a reasonable doubt. We conclude, therefore, that the appellant did not waive her objection to the evidence of her prior convictions on pleas of guilty by admitting the truth of the court records pertaining thereto, when she elected to testify in her own defense from the witness stand.

The judgment of the trial court is reversed and this cause is remanded for a new trial.

Reversed and remanded.

FOGLEMAN, J., not participating.