Ira RUSSEY *v.* STATE of Arkansas

CR 95-867                                   912 S.W.2d 420

Supreme Court of Arkansas
Opinion delivered December 18, 1995

*William R. Simpson, Jr.*, Public Defender, by: *C. Joseph Cordi, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Ira Russey was convicted by a jury of first-degree murder of his wife and sentenced to forty years' imprisonment. His sole point for reversal is that the trial court abused its discretion by allowing into evidence a police officer's testimony regarding a domestic violence incident which occurred between Ira and his wife, Diane, before the date he shot and killed her.

The state's evidence showed that, sometime in April of 1994, Diane left Ira, and moved into her mother's, Ruby Irvin's, house. Ira had professed his love for Diane, and wanted her to return to him. On June 2, 1994, Ira observed Diane in a car with a man named "Greg," and later that same day, Ira waited for Diane at Diane's mother's house. Diane arrived in her mother's car and an argument ensued between her and Ira. Diane fled back into the car where Ira broke the windows and hit Diane in the face, causing her to be taken to the hospital. On the morning of June 3, Diane swore out a warrant for Ira's arrest.

The state also presented testimony by other witnesses, Diane's grandmother, Mozella Ward, and Margaret Thomas, that Ira had said nobody else could have Diane and that he was going to kill her. In fact, both the state and Ira agree that, early on the morning of June 5, 1994, Ira took his loaded shotgun to Mrs. Irvin's house and confronted Diane about her having been with Greg. Ira testified that he had not intended to shoot Diane, but when she said, "Don't you worry about what me and Greg were doing," he said, "My mind snapped — I went to throw the shotgun and that's how I shot her in the arm." Ira further related the shot "blew out the bottom part of her arm," and then he left the

scene. Diane was hospitalized, but died on June 18, 1994. At trial, Ira claimed the shooting was accidental.

The state also called Detective Lawrence Welborn as a witness to testify concerning a disturbance call which had taken place on April 27, 1994 — thirty-nine days prior to the June 5 shooting. Over Ira's objection, the trial court permitted Welborn to testify that, when he responded to the April 27 disturbance call at the Russey's residence, he had observed a loaded shotgun lying on a bed, and he unloaded it and returned it to Ira. Diane gathered her clothes and left the house. During his direct examination, Welborn was shown the shotgun Ira used in shooting his wife, and he said that it was the same gun he had seen at the April 27 incident.

In this appeal, Ira urges that the state offered Welborn's testimony only for the purpose of showing Ira's propensity for violence. He also argues that, if this testimony had any relevance, it was to show Ira was "in the vicinity of a shotgun," and such evidence was more prejudicial than probative because the state had other means of proving Ira had access to a gun.

■■ Here, the state was required to prove Ira killed his wife with the purpose of doing so. Ark. Code Ann. § 5-10-112(a)(2) (Repl. 1994). This court has recognized that intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the killing. *Starling* v. *State*, 301 Ark. 603, 786 S.W.2d 114 (1990). Although A.R.E. Rule 404(b) prohibits evidence of other crimes, wrongs, or acts to prove the character of a person, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See Brenk* v. *State*, 311 Ark. 579, 847 S.W.2d 1 (1993).

■ Because Ira claimed he shot his wife accidentally on June 5, Detective Welborn's testimony concerning the April 27 domestic violence call was relevant to show lack of mistake or accident on Ira's part. At the very least, Welborn's testimony showed, by fair inference, that Ira and his loaded shotgun necessitated a call and an investigation by the police. Moreover, that disturbance involved the same shotgun Ira used only five weeks later when he shot and killed his wife. Also, based on the cir-

cumstances, we cannot say Welborn's testimony was unduly prejudicial.

For the above reasons, we affirm.