Kevin TATE  *v.*  STATE of Arkansas

CR 06-84                                    242 S.W.3d 254

Supreme Court of Arkansas
Opinion delivered November 2, 2006

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Justice. Appellant Kevin Tate was convicted by a jury of the first-degree murder of Melissa Portwood and sentenced to forty years' imprisonment. He asserts four points on appeal, arguing that the trial court erred: (1) by admitting the testimony of Brande Schaffer that Tate fired a gun near her two days before the shooting death of Portwood; (2) by allowing the State to improperly place Tate's character in issue; (3) by denying Tate's motion for a mistrial because of the prosecutor's remarks during closing arguments; and, (4) by admitting a series of photographs during the penalty phase of the trial depicting episodes in Portwood's life. We find no error, and thus we affirm the decision of the trial court.

On January 31, 2004, Hot Springs Police responded to a 911 call at the address in Hot Springs where Tate lived with his girlfriend Portwood, and Portwood's friend, Brande Schaffer. Tate made the 911 call and he was on the scene when the police arrived. Portwood was inside the apartment, suffering from a gunshot wound to the head. Portwood died the same night, shortly after her arrival at the hospital in Hot Springs. Tate was arrested at the scene and transported to the jail in Hot Springs. Tate originally informed the police that he had been cleaning a gun which accidentally discharged, wounding Portwood. He later stated that he accidentally shot Portwood while they were in the midst of an argument. The murder weapon was found lying on the bed beside Portwood. A note from Portwood to Tate dated January 28 was also found, informing Tate that Portwood was terminating their relationship.

On August 18, 2005, the State filed a motion to admit evidence pursuant to Ark. R. Evid. 404(b), seeking to admit, among other things, evidence that Tate had fired a gun in Portwood's apartment in September 2003, in an attempt to frighten Schaffer. In an opinion letter dated September 27, 2005, the trial judge failed to rule on that shooting incident. On October 13, 2005, the State filed an amended motion to admit 404(b) evidence, which stated that the shooting incident actually occurred on January 29, 2004, two days before the murder, and not in September 2003, as the previous motion had stated. At a pretrial hearing held in chambers on October 17, 2005, the trial court ruled that the incident was admissible pursuant to Rule 404(b) due to the change in date and its resulting increased proximity to the crime.

At trial on October 17, an acquaintance of Portwood's, Staci Musler, testified that to her knowledge, Tate was not employed. The Appellant objected and moved for a mistrial, contending that the State had thereby introduced impermissible evidence of Tate's character. The trial judge denied the motion for a mistrial. During his closing argument, Tate noted that the State did not play the 911 call made by Tate after the shooting. In its second closing argument, during the penalty phase, the State remarked that the Appellant had also chosen not to play the tape. Tate then objected to that statement and moved for a mistrial on the basis that the State's comments had shifted the burden of proof to the Appellant. The trial judge again denied a motion for a mistrial.

Staci Musler also testified that on the night before the murder, she had a conversation with Tate, and told him that Portwood would leave him if he persisted in his dalliances with other women. Tate responded, "No she won't. I'll kill her." The jury returned a verdict finding Tate guilty of first-degree murder on October 17, 2005.

During the penalty phase of the trial held on October 18, 2005, a series of twelve photographs depicting scenes from Portwood's life were admitted into evidence. The trial court had earlier denied Tate's motion in limine to exclude the photographs. Tate then filed a timely notice of appeal.

The Appellant's first point on appeal is: *The trial court erred by allowing into evidence the testimony of a witness that the appellant had fired a handgun into a couch.*

Brande Schaffer, who lived in the house with the victim and defendant, testified that approximately two days prior to the killing

in the instant case, the Appellant approached her when she was sitting on a couch inside Portwood's apartment. He was holding the pistol that was later identified as the murder weapon. She further testified that the Appellant asked her if she was afraid of him, and that upon receiving a negative response, the Appellant discharged the weapon into the couch near her foot. This testimony was admitted by the trial court pursuant to Ark. R. Evid. 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Hernandez v. State,* 331 Ark. 301, 962 S.W.2d 756 (1998). The list of exceptions set out in the rule is exemplary and not exhaustive. *White v. State,* 290 Ark. 130, 717 S.W.2d 784 (1986). Testimony is admissible pursuant to Rule 404(b) if it is independently relevant to the main issue, relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal or a bad person. *Mosley v. State,* 325 Ark. 469, 929 S.W.2d 693 (1996).

The Appellant argues that the bad act in question here, the discharge of the pistol, is not admissible because it is not substantially similar to the crime charged, and cites *Barrett v. State,* 354 Ark. 187, 119 S.W.3d 485 (2003), and *Russey v. State,* 322 Ark. 786, 912 S.W.2d 420 (1995), in support of that argument. In *Barrett,* we held that the defendant's physical assault on the same victim approximately one and one-half years prior to the murder in that case was admissible under 404(b) when the body exhibited injuries similar to those produced by the prior assault. In *Russey,* the evidence admitted pursuant to 404(b) was a police officer's testimony that approximately three months before the defendant's murder of his wife, while the officer was responding to a domestic disturbance call, he observed the shotgun with which the wife was killed lying loaded on a bed in the defendant's home. *Russey,* 322 Ark. at 788, 912 S.W.2d at 421. The defendant maintained that he had accidentally fired the gunshot which killed his wife, and we held that the officer's observance of the murder weapon during the domestic disturbance call was admissible under Rule 404(b) to show absence of mistake or accident. *Id.*

*Russey* is instructive in the present case. Here, the evidence to which Tate objects is testimony that he intentionally fired the murder weapon inside the house where the killing occurred, approximately two days prior to the alleged murder, in an apparent attempt to intimidate the victim's roommate. This evidence has more independent relevance than the evidence admitted in *Russey*, which was the mere observance of the murder weapon during a domestic disturbance three months prior, and did not involve the handling or discharge of the weapon.

Tate maintained that he accidentally fired the shot that killed Portwood. In *Saul v. State*, 365 Ark. 77, 225 S.W.3d 373 (2006), the defendant was convicted of manufacturing methamphetamine. At trial, he claimed that he had no knowledge of how a methamphetamine lab happened to be in his van. *Id.* There, we held that the defendant's prior arrests for the manufacture of methamphetamine, and for shoplifting methamphetamine precursors, were relevant to show motive, intent, and absence of mistake or accident as to his manufacture of the drug. *Id.*

The present case is similar. We find that the evidence of Tate's intentional discharge of the murder weapon in the manner and circumstance described above was relevant to show lack of mistake or accident. Moreover, considered in conjunction with the testimony that Tate uttered a contingent threat against Portwood's life on the night before her murder, the shot into the couch is probative of Tate's motive and intent to commit the murder. For the foregoing reasons, we conclude that the trial judge did not abuse his discretion by admitting the evidence.

The Appellant's second point on appeal is: *The State improperly placed the appellant's character in issue in its case in chief.*

A witness for the prosecution testified that to her knowledge, Tate was unemployed. The Appellant objected, and moved for a mistrial. The trial court overruled the objection and denied the motion for a mistrial. The Appellant considers that the effect of this testimony was to impugn his character in contravention of Ark. R. Evid. 404(a), in that it portrayed the appellant as a "worthless parasite living off the victim." Therefore, the Appellant contends that the trial court erred in denying his motion for a mistrial.

A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of

the trial itself has been manifestly affected. *Gaines v. State,* 340 Ark. 99, 8 S.W.3d 547 (2000); *Ward v. State,* 338 Ark. 619, 1 S.W.3d 1 (1999). The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the decision will not be disturbed on appeal. *Id.* We defer to the trial court, as it is in a superior position to determine the effect of the allegedly prejudicial remark on the jury. *Id.*

Rule 404(a) states in pertinent part:

> (a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

> (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.

Initially, it should be noted that the status of being unemployed, yet cohabitating with one who is employed, need not carry a connotation of parasitism, as the Appellant alleges, but may instead be merely symbiotic, i.e., mutually beneficial. The State argued that the unemployment of Tate was relevant to show motive, because the impending termination of his relationship with Portwood evidenced by the letter indicated that Tate was soon to lose the advantages that he derived from the relationship, such as free lodging and transportation, upon which he was dependent. This was a prospect which might be expected to arouse Tate's ire, and thus also might be illuminating as a motive for Tate's violent action against Portwood. This court has held that when the purpose of evidence is to show motive, anything and everything that might have influenced the commission of the criminal act may, as a rule, be shown. *See Morgan v. State,* 359 Ark. 168, 195 S.W.3d 889 (2004). Furthermore, the State is entitled to produce evidence showing circumstances which explain the act, show a motive, or illustrate the accused's state of mind. *See Id.*

It is doubtful whether the bald fact of unemployment, in relation to the crime here, constitutes the type of character evidence contemplated by Rule 404(a). In any case, because of the possible relevance that his unemployment had to Tate's motive for the present crime, the trial judge did not abuse his discretion by declining to declare the drastic remedy of a mistrial.

The Appellant's third point on appeal is: *The prosecutor's remarks in closing argument shifting the burden of proof to the appellant were reversible error.*

During closing arguments for the penalty phase, the Appellant's counsel referred to the fact that the State possessed the tape of the 911 call that Tate made after the alleged murder but did not play it. Subsequently, during its closing argument for the penalty phase, the State admitted that it had the 911 tape but did not play it, and additionally stated that the defense also could have played the tape, but chose not to do so. The Appellant objected and moved for a mistrial. The trial judge sustained the objection, but denied the motion for mistrial. He then admonished the jury to disregard the remarks of the prosecutor, and stated that those remarks were not evidence. The Appellant contends that the denial of his motion for mistrial was reversible error, because the prosecutor's comments improperly shifted the burden of proof to the Appellant.

We will not reverse the action of a trial court in matters pertaining to its control, supervision, and determination of the propriety of arguments of counsel in the absence of manifest abuse of discretion. *Cook v. State,* 316 Ark. 384, 386-87, 872 S.W.2d 72, 73 (1994). Generally, such an error may be cured by a remedial instruction from the court. *Id.* Closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Lee v. State,* 326 Ark. 529, 932 S.W.2d 756 (1996). Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Bullock v. State,* 317 Ark. 204, 876 S.W.2d 579 (1994).

In *Nelson v. State,* 306 Ark. 456, 816 S.W.2d 159 (1991), the prosecutor remarked during closing arguments upon possibly incriminating matters that were left unsaid by a witness for the State. The defense objected, and the trial court overruled. During the cross-examination of that witness, defense counsel had alluded to prior statements made by the witness which possibly contradicted his testimony. This court found that the defense counsel's remarks opened the door to a response by the State on matters outside the testimony, and thus the trial court did not abuse its discretion by overruling the objection. *Nelson,* 306 Ark. at 460, 816 S.W.2d at 161.

In *Cook v. State, supra,* we upheld the trial judge's denial of a motion for a mistrial when the prosecutor commented that the

defense had failed to call an additional alibi witness to corroborate the testimony of a witness who was called. The trial court admonished the jury after that statement by the prosecutor. We noted that the remark was not about the defendant's refusal to testify, in violation of his Fifth Amendment privilege against self incrimination, but instead concerned the credibility of a witness. We held that even if the prosecutor's remark was an attempt to shift the burden, the trial court did not abuse its discretion by determining that the admonishment cured any possible prejudice. *Cook*, 316 Ark. at 387, 872 S.W.2d at 74.

In the present case, the prosecutor's statements concerning the 911 tape were made after the defense counsel opened the door by remarking upon the State's failure to play the tape, they did not concern the defendant's failure to testify, and they do not amount to an appeal to the juror's passions. An admonishment was given to the jury regarding the prosecutorial statements. In these circumstances, the trial judge did not manifestly abuse his discretion by refusing to grant the extreme remedy of a mistrial.

The Appellant's fourth point on appeal is: *The admission into evidence during the penalty phase of a photographic history of the victim's life was a denial of due process.*

The State introduced twelve photographs depicting the life of the victim during the penalty phase. In *Hicks v. State*, 327 Ark. 727, 940 S.W.2d 855 (1997), this court affirmed the trial court's admission of a series of photographs during the penalty phase, which was much more extensive and detailed than the series in question here, consisting of some one hundred and sixty photographs depicting various scenes in the life of a murder victim. Also, first-degree murder is a Class Y felony; *see* Ark. Code Ann. § 5-10-102, which carries a sentencing range of ten to forty years or life. Ark. Code Ann. § 5-4-401(a)(1). A defendant who has received a sentence within the statutory range short of the maximum sentence cannot show prejudice from the sentence. *See Young v. State*, 287 Ark. 361, 699 S.W.2d 398 (1985).

Tate was sentenced to forty years in prison. The maximum sentence he could have received was life in prison. Tate's sentence was less than the maximum possible sentence for his conviction, and thus he cannot demonstrate that he was prejudiced by the sentence. Because the Appellant is unable to

demonstrate that he was prejudiced by the sentence, we need not consider his due process argument regarding the introduction of the photographs.

Affirmed.

HANNAH, C.J., dissents.

JIM HANNAH, Chief Justice, dissenting. I respectfully dissent on the admission of evidence of other crimes, wrongs, or acts, to prove guilt. State assistant medical examiner Dr. Daniel J. Konzelman testified that Melissa Portwood "had a contact gunshot wound to the head . . . . A contact wound means that the muzzle of the weapon is touching the skin when the gun is discharged." In his opening statement, Tate's attorney stated, "We admit that Kevin caused the death of Melissa Portwood . . . . Your job, however, is to determine from the evidence what degree of a homicide this is." Tate's attorney also asserted in opening statement that, "[w]e believe when you consider all the facts and the evidence presented by the State in this case that you'll have a reasonable doubt as to the charge that the State has brought of murder in the first-degree." In testimony, in opening statements, and in closing argument, it was mentioned that Tate asserted at the scene and later in a statement to police that the shooting was accidental.

The evidence at issue under Ark. R. Evid. 404(b) is testimony by Brandie Shaffer that two days before the murder, Tate attempted to scare her and fired a pistol into a couch. The circuit court admitted the testimony and instructed the jury that the evidence was not to be considered as evidence that he acted similarly in killing Portwood but to show, "motive, intent, absence of mistake, or accident."

Standing in isolation, evidence that two days before the murder Tate tried to scare Shaffer and fired a pistol into a couch is not evidence that makes it more probable that he purposely, knowingly, while under extreme emotional disturbance, or negligently[1] shot Portwood when he placed the pistol to her head and pulled the trigger. However, taking all the facts of the case into account, Tate's motive for the murder could have been anger because he feared Portwood was about to leave him. Under those

---

[1] The jury was instructed on first-degree murder, second-degree murder, manslaughter, and negligent homicide.

facts, it can be argued that the evidence shows motive or intent indirectly in that Tate was angry with anyone associated with Portwood over her threat to leave him; however, the relevance is slight. Even given slight relevance, this evidence of another crime, particularly one committed with the same firearm used to kill Portwood, is highly prejudicial. The probative value is minuscule. Thus, the evidence might have made it past Ark. R. Evid. 401 in an analysis on relevancy, but it should never have made it past an Ark. R. Evid. 403 analysis because of the slight probative value and certain prejudicial harm.

In addition to motive and intent, the circuit court also listed absence of mistake or accident as a reason to allow the evidence. Testimony of Shaffer that Tate tried to scare her and shot into the couch two days before the murder does not cast light on whether Tate mistakenly or accidentally killed Portwood when he put the pistol to her head and pulled the trigger. It is not relevant on absence of mistake or accident.

The evidence was admitted as a result of the mechanical analysis now utilized by this court in Rule 404(b) cases. The real reason the evidence was offered is clear. The State wished to show that Tate was a man of a violent and dangerous character and that at the time of the murder he was acting in conformity with that character. This was inadmissible under Ark. R. Evid. 404(a) and Rule 404(b).

The mechanical approach applied in this case of searching for a listed exception to Rule 404(b) was noted in *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986). In *White*, we expressed concern over the approach, and stated that "the better practice and the one intended by the drafters of Rule 404(b) is to consider the list of exceptions to be exemplary only and not exhaustive." *White*, 290 Ark. at 140, 717 S.W.2d at 789. The list of "exceptions" cannot be exhaustive because every case is different, and relevance as well as prejudicial harm must be analyzed in each case. Referring to a "list" of exceptions in opinions creates an undue expectation that all possible purposes for which evidence may be admitted under Rule 404(b) are catalogued and readily available in the Rule.

Our use of the term "exception" also arguably creates confusion. An "exception," in this context, is "something that is excluded from a rule's operation." *Black's Law Dictionary* 604 (8th ed. 2004). Characterizing the list of examples set out in Rule

404(b) as exceptions encourages an analysis that is comprised of looking to see if the evidence could possibly fit into any listed "exception" so that it is excluded from the Rule's operation. What is actually at issue is whether the evidence is relevant to prove a fact that is of consequence to the determination of the action and whether the probative value of the fact outweighs any prejudicial harm. If that is the case, the evidence is independently relevant, and absent undue prejudice, will be admitted.

The rule against the use of character evidence to prove guilt, and the accompanying rule that relevant evidence is not necessarily excluded because it coincidentally also reveals the commission of a separate crime or wrong, predate adoption of the current rules of evidence. Earlier cases are helpful in understanding the principles at issue in considering evidence that reveals other crimes and wrongs. In *State v. DuLaney*, 87 Ark. 17, 22-23, 112 S.W. 158, 160 (1908), we stated:

> The principle of evidence that offenses or acts similar to the one charged may be competent for the purpose of showing knowledge, intent or design is as throughly established as the general prohibition that other crimes or offenses cannot be shown in evidence against a defendant charged with a particular crime. While the principle is usually spoken of as being an exception to the general rule, yet as a matter of fact, it is not an exception; for it is not proof of other crimes as crimes, but merely evidence of other acts, which are from their nature competent as showing knowledge, intent or design, although they may be crimes, which is admitted. In other words, the fact that evidence shows the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial.

Rule 404 codifies the longstanding rule that evidence of character may not be used to prove guilt; however, that is precisely what is now happening under the current myopic analysis that amounts to little more than admission of the evidence followed by recitation of listed exceptions to the jury.

Longstanding principles of criminal law are at issue. "No one doubts the fundamental rule of exclusion, which forbids the prosecution from proving the commission of one crime by proof of the commission of another." *Alford v. State*, 223 Ark. 330, 333, 266 S.W.2d 804, 806 (1954). A finding of guilt must rest upon proof, beyond a reasonable doubt, that the accused committed the

exact offense for which he is being tried. *Hickey v. State,* 263 Ark. 809, 569 S.W.2d 64 (1978). In other words, the presumption of innocence is at issue. A comparison drawn by this court between being tried in prison garb and evidence of prior bad acts illustrates the concern over the presumption of innocence. In *Hill v. State,* 251 Ark. 370, 371-72, 472 S.W.2d 722, 723 (1971), a case concerning the rule against trying a person while wearing prison garb, the court stated:

> The rationale of the rule is reasonable and sound because an accused is presumed innocent until proven guilty, and when he does not take the witness stand as a witness in his own defense, other unrelated crimes or convictions may not be used in evidence against him merely for the purpose of getting across to the jury the fact that he is a "criminal" and therefore likely to have committed the crime with which he is charged. *Dickerson v. State,* 251 Ark. 257, 471 S.W.2d 755 (1971). Certainly an accused should not be forced to wear a badge conveying evidence which is not admissible when conveyed in words.

Rule 404 is intended to protect the presumption of innocence. "The exclusion of other bad acts evidence offered to show a defendant's propensity protects the presumption of innocence and is deeply rooted in our jurisprudence." *State v. Trotter,* 262 Neb. 443, 457, 632 N.W.2d 325, 337 (2001).

As recently as *Anderson v. State,* 353 Ark. 384, 399-400, 108 S.W.3d 592, 602 (2003), we quoted *Williams v. State,* 259 Ark. 667, 672-73, 535 S.W.2d 842, 846 (1976), where we stated:

> The presumption of innocence is so strong that it serves an accused as evidence in his favor throughout the trial and entitles him to an acquittal unless the state adduces evidence which convinces the jury beyond a reasonable doubt that he is guilty of the crime charged. It is a fundamental right in the American system antedating any constitution and an essential of due process of law. It alone puts in issue the truth and credibility of all of the evidence offered against an accused.

In *Terry v. State,* 303 Ark. 270, 273, 796 S.W.2d 332, 334 (1990), we stated the rule in cases concerning Rule 404(b):

> The presumption of innocence is not articulated in the Constitution of the United States; however, it is a basic component of a fair trial

and the right to a fair trial is a fundamental liberty secured by the fourteenth amendment. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Consequently, courts must be vigilant in guarding against dilution of the presumption of innocence so that guilt will be established beyond a reasonable doubt by probative evidence. Deleterious effects on fundamental rights call for close judicial scrutiny.

Guilt is not based on proof beyond a reasonable doubt in cases such as the present case, where the jury may have found Tate guilty of first-degree murder due to the evidence that he scared a woman and fired a pistol into a couch two days before the murder. Guilt based on criminal acts other than the act charged is not proof beyond a reasonable doubt of the crime charged. Evidence of other crimes, wrongs, or acts offered to show that the defendant possesses an attribute or propensity to commit a given act is not credible admissible evidence that he or she committed the act charged.

I see none of the required close judicial scrutiny in this case. The evidence in this case was admitted during the guilt phase to offer Tate's character trait as proof that he committed the first-degree murder of Portwood. It was inadmissible for that purpose and its admission nullifies the presumption of innocence and constitutes a violation of his constitutional right to due process. Further, Tate did not offer evidence of his good character or of a particular character trait. The defendant must first raise the character issue before the State may offer any rebuttal. *Landrum v. State*, 320 Ark. 81, 894 S.W.2d 933 (1995). By offering evidence of Tate's bad character where Tate offered no evidence of his good character first, the State also raised the specter of whether the jury wondered why Tate did not testify and rebut this attack on his character. I would reverse and remand for a new trial.